**Mark Andrew FOWLER, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–86–510.**

Court of Criminal Appeals of Oklahoma.

Aug. 30, 1989.

Rehearing Denied Oct. 2, 1989.

Mark Barrett, Asst. Appellate Public Defender, Norman, for appellant.

Robert H. Henry, Atty. Gen., Susan Stewart Dickerson, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

Mark Andrew Fowler, appellant, was convicted in Oklahoma County District Court in Case No. CRF–85–3343 of three counts of Murder in the First Degree in the commission of Robbery With a Dangerous Weapon pursuant to the felony-murder doctrine codified at 21 O.S.1981, § 701.7(B). He was tried before a jury who set punishment at death on each count. The trial court sentenced him accordingly.

For a general statement of the facts, *see Fox v. State,* 779 P.2d 562 (Okla.Crim.App. 1989).

### I

Appellant first complains that the trial court erred in failing to order a change of venue based on extensive pretrial publicity. We have reviewed the extensive voir dire in this case, and for the reasons stated in *Fox v. State,* 779 P.2d 562 (Okl.Cr.1989), we find no error.

### II

Appellant next contends that the trial court erred in not severing his trial from his codefendants because of their antagonistic defenses. We have reviewed appellant's argument and for the reasons stated in *Fox v. State,* 779 P.2d 562 (Okla.Crim. App.1989), we find this assignment to be without merit.

### III

Appellant also asserts that the trial court erred by requiring the codefendants to join their nine peremptory challenges. For the reasons given in *Fox v. State,* 779 P.2d 562 (Okla.Crim.App.1989), we find this contention to be without merit.

### IV

Appellant asserts that he was denied a fair trial through the systematic exclusion of "minorities" from the jury. We have reviewed the record, and for the reasons stated in *Fox v. State,* 779 P.2d 562 (Okla. Crim.App.1989), we find this assignment of error to be without merit.

### V

Appellant next contends that he was denied a jury representing a fair cross section of the community because 38 O.S.1981, § 28(A), allows jurors seventy years of age or above to opt out of jury service. For the reasons given in *Fox v. State,* 779 P.2d 562 (Okla.Crim.App.1989), we find this assignment to be without merit.

### VI

Appellant asserts that the trial court erred in denying his motion to suppress the statements he made after his arrest. Specifically, appellant complains that his warrantless arrest at his girlfriend's apartment violated his constitutional rights.

At approximately 8:00 p.m. on the evening of the robbery/murders, Detective Ferling of the Edmond police department received a telephone call from Roger Collins. Mr. Collins informed the detective that he knew who had committed the robbery and murders, and that he knew the location of the weapon that had been used. Detective Ferling arranged for Mr. Collins to be brought to the police station. During an interview, Mr. Collins mentioned Chris Glazner and Jimmie Collins as persons possibly having more information concerning the crimes. Later the same evening, these two gentlemen were also brought in and interviewed. At approximately 11:00 p.m., these three gentlemen revealed the names of Billy Fox and Mark Fowler as the perpetrators of the crimes.

The gentlemen also informed Detective Ferling that the appellant was possibly

staying with his girlfriend at her apartment. In an attempt to confirm this, Detective Ferling called the apartment manager and learned that the appellant's girlfriend did rent an apartment there. The manager stated that she also believed a guy named Mark lived there. While the manager did not know if anyone was presently at the apartment, she could see that a light was on. Finally, the manager informed the detective that the occupants were supposed to be moving out soon, and that she had previously seen them moving property.

At approximately the same time, Detective Ferling received word that Billy Fox had been arrested as he was leaving his residence. Meanwhile, a district judge who was in the station, issued a warrant to take both suspects into custody. The detectives proceeded to the apartment, where they met two officers who had already arrived. After some planning, the officers approached the apartment. They knocked on the door and announced themselves as police officers. After receiving a response, the officers knocked again and asked if the appellant was present. The door then opened and the occupants came outside. The appellant was then placed under arrest.

A firmly established principle of constitutional law is that nonconsensual, warrantless instrusions into the dwelling are *per se* unreasonable. *See Coolidge v. New Hampshire,* 403 U.S. 443, 444, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971); *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). As the United States Supreme Court has repeatedly stated, "warrantless felony arrests in the home are prohibited by the Fourth Amendment, absent probable cause and exigent circumstances." *Welsh v. Wisconsin,* 466 U.S. 740, 749, 104 S.Ct. 2091, 2097, 80 L.Ed.2d 732 (1984). *See also Payton v. New York,* 445 U.S. 573, 583–590, 100 S.Ct. 1371, 1378–1382, 63 L.Ed.2d 639 (1980).

In the present case, during an *in camera* hearing at trial, the appellant conceded that probable cause existed for his arrest. Therefore, the only issue for us to consider is whether any exigent circumstances existed. Initially, we note that the Supreme Court has held that an important factor to be considered when determining whether any exigency exists is the gravity of the offense for which the arrest is being made. *Welsh,* 104 S.Ct. at 2099.

Thus, in light of that fact, and the fact that the police had probable cause to arrest the appellant, we find the following: the detectives knew where the appellant might be, although they did not know if in fact he was there; the detectives knew that the codefendant had been arrested while leaving his residence; the detectives did not know whether the codefendants had been in contact with each other; the detectives realized that if the appellant was not in the apartment he could have been fleeing; that there was a possibility that the appellant was armed; and, that there were other people in the apartment who could have been harmed or held hostage. We therefore find that sufficient exigencies existed to support the warrantless arrest under 22 O.S.1981, § 196, and hold that the trial court properly admitted the appellant's pretrial statement.

## VII

■ In the next assignment of error, appellant complains that the trial court erred by failing to admit the entirety of his pretrial statement. Through the testimony of Detective Fairchild, the State introduced a limited portion of the statement. Appellant asserts that the jury was presented only with the portions which would tend to incriminate him and did not hear the remaining portions which tended to exculpate him.

In *Williams v. State,* 542 P.2d 554, 573 (Okla.Crim.App.1975), *vacated on other grounds* 428 U.S. 907, 96 S.Ct. 3218, 49 L.Ed.2d 1215 (1976), this Court stated that when a confession is admissible, the whole of what the accused said upon the subject at the time of making the confession is admissible and should be taken together; and if the prosecution fails to prove the whole statement, the accused is entitled to put in evidence all that was said to and by

him at the time which bears upon the subject of controversy, including any exculpatory or self-serving declarations connected therewith.

Therefore, while the appellant was entitled to offer the whole statement into evidence, the record is bare of any attempt by him to do so. The State used the excised portion to place the appellant at the scene of the crimes. The appellant did not object. In fact, during the *in camera* hearing, the appellant helped dictate the questions to be put to Detective Fairchild concerning the statement. Moreover, the appellant used Detective Fairchild's testimony during his closing argument, arguing that the appellant was at the store, however, simply as a lookout. Thus, there being no objection raised by the appellant, any alleged error has been waived and this Court has no grounds upon which to base a ruling. *Johnson v. State,* 662 P.2d 687, 690 (Okla. Crim.App.1983).

### VIII

In the next three assignments of error, appellant contends that three individuals who testified as expert witnesses at trial should not have been allowed to do so. We have reviewed the testimony given by each individual, and for the reasons stated in *Fox v. State,* 779 P.2d 562 (Okla.Crim.App. 1989), we find no error.

### IX

Appellant next contends that several prejudicial errors deprived him of a fair trial. First, appellant contends that certain photographs and a video tape were more prejudicial than probative and should not have been admitted into evidence. We have reviewed each photograph cited and the videotape, and for the reasons stated in *Fox v. State,* 779 P.2d 562 (Okla.Crim.App. 1989), we find no error.

■ Appellant also complains that during closing argument, the prosecutor made various statements containing personal opinion as to the sufficiency of the evidence. We disagree. Not only were the comments not objected to, thus waiving all

but fundamental error, *Trissell v. State,* 737 P.2d 1228, 1230 (Okla.Crim.App.1987), we find the comments to be reasonable inferences based upon the evidence. *Lewis v. State,* 732 P.2d 1, 3 (Okla.Crim.App. 1987).

Appellant next asserts that the prosecutor misstated the law concerning felony-murder during the first stage closing argument. We have reviewed the comment and find no erroneous impression of the law, and therefore no error. *Cf. Vaughn v. State,* 697 P.2d 963 (Okla.Crim.App.1985) (prosecutor's statement regarding reasonable doubt did not create erroneous impression).

■ Appellant contends that the demonstration and testimony of Oklahoma City police officer Roy Golightly, concerning the method by which the gun used in the robbery would have been held and fired, was prejudicially improper. We disagree. The record reveals nothing improper about the demonstration, and we find that officer Golightly was properly allowed to testify. 12 O.S.1981, § 2702.

Finally, appellant urges that the cumulative effect of the alleged prejudicial errors warrants a reversal of his conviction. This Court has held numerous times that when individual assignments of error have been without merit, the assignment considering the accumulation of the errors is likewise without merit. *Brinlee v. State,* 543 P.2d 744, 754 (Okla.Crim.App.1975).

### X

■ Appellant next contends that a prosecutorial statement during closing argument misled the jury. The comment of the prosecutor was as follows:

and you remember by Mark Fowler's own statement he was watching for people coming in and out as a part of that armed robbery as it took place. That is a positive act, that is part of an armed robbery, he was a principal in that armed robbery whether he did the killing or not, he's guilty of felony murder. (Tr. 1831).

Specifically, appellant complains that the prosecutor said he admitted to an armed

robbery while the appellant argued that he thought the crime was going to be a "sneek (sic) thief larceny." (Tr. 1788). We disagree. While it is true that this was the theme of the appellant's argument, no evidence of this contention was ever presented. The record reveals that the appellant was with the codefendant when he took a gun and shells from Chris Glazner's room. Furthermore, the appellant admitted being in the store watching for people coming in. The evidence that this robbery was an armed robbery is overwhelming. This Court has repeatedly held that counsel for both sides have the right to argue the evidence presented at trial and to make reasonable inferences therefrom. *Lewis v. State,* 732 P.2d 1, 3 (Okla.Crim.App.1987). Moreover, the comment of which the appellant now complains was not objected to at trial. Therefore, error, if any, not of a fundamental nature is waived. *Trissell v. State,* 737 P.2d 1228, 1230 (Okla.Crim.App.1987). Finding no fundamental error, this assignment of error is without merit.

## XI

█ Appellant next contends that there was insufficient evidence to sustain his conviction. This Court set forth the proper test to be used in a sufficiency of the evidence challenge in *Spuehler v. State,* 709 P.2d 202 (Okla.Crim.App.1985), which is:

whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt.

Furthermore, the court will accept all reasonable inferences and credibility choices that tend to support the jury's verdict. *Williams v. State,* 721 P.2d 1318, 1320 (Okla.Crim.App.1986).

The record reveals that the appellant was with the codefendant when he borrowed a shotgun and shells from a roommate on the morning before the robbery. Hair consistent with the appellant's was found on a victim's shirt and on the gun bolt. The presence of blood was found on the clothing which the appellant had worn that evening. Finally, after the murders, the appellant was in possession of large sums of money. We find that the jury could have found the appellant guilty beyond a reasonable doubt of the crimes charged.

## XII

Appellant next argues that the trial court erred by refusing to instruct the jury on the offense of Second Degree Felony–Murder. Appellant claims that there was evidence supporting the view that the murders occurred during the course of Burglary in the Second Degree or Grand Larceny. We do not agree.

█ The trial court is to instruct the jury on every degree of homicide which the evidence in any reasonable view suggests. *Lee v. State,* 700 P.2d 1017, 1019 (Okla. Crim.App.1985). Friends of both defendants, who had overheard previous discussions concerning the plan to rob the store, testified that the plan supposedly could have been carried out without the appellant and his co-defendant being seen by the store clerks. While earlier plans may have considered taking money from the store by larceny, the fact remains, the evidence presented at trial demonstrated that during the early morning hours of July 3, 1985, an armed robbery and three homicides occurred. When there is no evidence to support a lower degree of the crime charged, it is not necessary to instruct thereon. *Howe v. State,* 669 P.2d 780, 781 (Okla.Crim.App. 1983). The trial court did not err on this point.

## XIII

In the next assignment of error, appellant contends that the trial court erred by not issuing an instruction limiting the jury in its consideration of the confession of the nontestifying codefendant. Appellant concedes in his brief that the trial judge did exclude all evidence of the co-defendant directly accusing the appellant of participating in the homicides. Appellant argues, however, that evidence was presented later that implied the appellant was involved in the homicides.

At trial, Chris Glazner, a roommate of the codefendant, testified that during the early morning hours of July 3, 1985, he saw the codefendant and the appellant in his room. Mr. Glazner testified that at approximately 7:00 a.m. the same morning, the codefendant came into his room and woke him. Mr. Glazner testified that the appellant was not present. The codefendant brought a shotgun into the room, put it in a corner and confessed to Mr. Glazner that "he had f_____ up and that he had killed some people." Mr. Glazner further testified that he and the codefendant proceeded into the living room, where they turned on the television and caught a glimpse of a news bulletin concerning three murders at Wynn's IGA. The codefendant admitted to Mr. Glazner that that was what he had done.

When asked upon direct examination whether the codefendant had said how he had killed the people, Mr. Glazner stated that the codefendant had mentioned hitting one over the head with a gun. On cross-examination by codefendant's counsel, Mr. Glazner testified that the codefendant never stated that he had shot or stabbed anyone. Appellant's counsel asked no questions of the witness nor objected to any of the aforementioned testimony.

During closing argument of the first stage, the prosecutor commented as follows:

> Chris Glazner is getting up to go to the work and you heard Chris Glazner. He sees [the codefendant] putting his shotgun back and he says, hey, what's going on? and [the codefendant] rather crudely says, 'Well, I messed up. I killed some people', as he turned on the t.v., ... three people killed up in Edmond and 'I did it. I killed two of them and I killed the third one.' What didn't he say? He didn't say I stabbed anybody. He said, 'I killed two people and I clubbed the third one.' There were only two people out there that morning pulling that robbery. If all he did was shoot and club, who did the stabbing, ladies and gentlemen? You don't need Tom Bevel (an expert witness) to answer that question for you although he answered it very well.

Specifically, appellant contends that the prosecutor's comment was an impermissible inference to the appellant based on the codefendant's confession to his roommate.

In *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Supreme Court held that a defendant is deprived of his rights under the confrontation clause when his nontestifying codefendant's confession naming him as a participant in the crime is introduced at their joint trial, even if the jury is instructed to consider that confession only against the codefendant. In the present case, it is clear that the codefendant's verbal confession to his roommate was not incriminating to the appellant. Indeed, there was no indication from the confession that anyone other than the codefendant had participated in the crime. Thus, we find no violation of the confrontation clause under *Bruton*.

In *Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987), the Supreme Court held that the confrontation clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when the confession has been redacted to eliminate not only the defendant's name, but any reference to the defendant's existence. In *Richardson*, a nontestifying codefendant's confession, which had been redacted to omit all references to the defendant, was admitted at trial. During closing argument, the prosecutor admonished the jury not to use the codefendant's confession against the defendant; however, later in his argument, he linked the defendant to a portion of the confession which described a conversation between the other codefendants while in a car. The Court distinguished *Bruton* by noting that the confession was not incriminating on its face, and became so only when linked with evidence introduced later at trial, that being the defendant's own testimony. The Court remanded the case in order to determine the harm caused by the prosecutor's attempt to undo the effect of the limiting instruction by urging the jury to use the codefendant's

confession in evaluating the defendant's case.

■ While we find part of the prosecutor's comment to be outside the record, we can find no error warranting a reversal. We cannot say that the prosecutor's comment linked the appellant to the codefendant's oral *confession*. As discussed previously, there was nothing to link the appellant to because appellant was not there and the codefendant did not mention anyone else as participating in the crimes. The prosecutor's comment did link the appellant to the *crime*, but there was ample evidence presented at trial to support that inference. Even appellant admits in his brief that he was in the building. (Appellant's brief at 23). Prosecutors are entitled to draw logical inferences and state conclusions based upon the evidence. *Jones v. State*, 738 P.2d 525, 530 (Okla.Crim.App.1987). Finally, even though the prosecutor did go outside the record concerning the codefendant's actions at the scene, such error could have only prejudiced the codefendant. Error alone is not sufficient to require reversal. The error must injure the defendant and the burden is on him to establish that he was prejudiced in his substantial rights by the error. *Smith v. State*, 656 P.2d 277, 284 (Okla.Crim.App.1982).

■ The trial court did instruct the jury that each defendant was entitled to have his case decided on the basis of the evidence applicable to him. (O.R. 567). However, it did not use an instruction specifically limiting the jury's consideration of the confession only to the person confessing. *See* Oklahoma Uniform Jury Instructions (Criminal) 817. While we find this to be error, not all trial errors which violate the Constitution automatically call for reversal. *Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705, 710 (1967). Due to the overwhelming evidence of appellant's guilt, we find the error to be harmless beyond a reasonable doubt. *Id.* at 23, 87 S.Ct. at 827.

## XIII

■ Appellant next asserts that he was denied effective assistance of counsel as guaranteed by the Sixth Amendment because his attorney failed to make objections during the prosecutor's closing argument or to request that certain instructions be given to the jury. Such a general assignment of ineffectiveness does not begin to meet the test and standards of constitutional error established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See also Brecheen v. State*, 732 P.2d 889, 899 (Okla.Crim.App. 1987).

Appellant also complains of his counsel's statement to the jury that, "it is unpalpable too, I'm sure to find him [appellant] not guilty of anything because he went to that store with the intention of taking money away, but the situation got out of hand." We note that the Supreme Court has stated that even the best criminal defense attorneys would not defend a particular client in the same way. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Thus, we refuse to second-guess counsel's trial strategy. Furthermore, appellant must not only demonstrate a serious deficiency in counsel's performance, he must also show that the deficiency prejudiced the defense so seriously as to make the result of the trial unreliable. *Id. Coleman v. State*, 693 P.2d 4 (Okla. Crim.App.1984). Appellant has failed to do either.

We have reviewed the record and cannot say that trial counsel's performance fell below that of reasonably effective counsel. *Brecheen*, 732 P.2d at 899.

## XIV

During the sentencing stage, the jury returned three verdicts setting the punishment at death for each count. On a separate verdict form, the jury found the following five aggravating circumstances to have existed: (1) the defendant knowingly created a great risk of death to more than one person; (2) the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution; (3) the defendant was previously convicted of a felony involving the use or threat of violence to the person; (4) the existence of a probabili-

ty that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and (5) that the murder of John Barrier was especially heinous, atrocious or cruel. Specifically, appellant contends that he was entitled to have the aggravating circumstances determined as to each count.

Initially, we note that the jury did not merely return a general verdict stating that it found at least one aggravating circumstance. The jury expressly found five aggravating circumstances that were valid and legally sufficient to support the death penalty. *See Zant v. Stephens,* 462 U.S. 862, 881, 103 S.Ct. 2733, 2745, 77 L.Ed.2d 235 (1983). Furthermore, we find the record sufficient to support each aggravating circumstance as to each count.

It is readily apparent from the facts of the case that the murders created a great risk of death to more than one person, as the three victims were all working when the appellant and his codefendant arrived to rob the store. The jury's finding in this regard is adequately supported.

The record also reveals that codefendant Fox was a former employee of the store and had worked with one of the victims. Moreover, there was no evidence that either codefendant had attempted to disguise their identities, which would have made subsequent identification probable. Furthermore, the evidence of the crimes was hidden in various locations. This evidence amply supports the jury's finding that the murders were committed for the purpose of avoiding or preventing a lawful arrest or prosecution. *See Moore v. State,* 736 P.2d 161 (Okla.Crim.App.1987), *cert. denied,* — U.S. —, 108 S.Ct. 212, 98 L.Ed.2d 163 (1987).

During the second stage of trial, the State offered certified judgments and sentences, to which the appellant stipulated, regarding the appellant's prior convictions for five counts of forcible oral sodomy. These convictions support the jury's finding that the appellant had previously been convicted of a felony involving the use or threat of violence to the person.

The brutal and calloused manner in which the murders were committed supports the jury's finding that there is a probability that the appellant would commit future acts of violence which would be a continuing threat to society. *See Van-Woundenberg v. State,* 720 P.2d 328, 337 (Okla.Crim.App.1986), *cert. denied,* 479 U.S. 956, 107 S.Ct. 447, 93 L.Ed.2d 395 (1986). Therefore, for these reasons and those stated in *Fox v. State,* 779 P.2d 562 (Okla.Crim.App.1989), we find sufficient evidence from the record to support these aggravating circumstances as to each count.

Finally, the record reveals that John Barrier was stabbed numerous times and bludgeoned in the back of the head. The record further reveals that Mr. Barrier attempted to fight off the attack and begged for his life before he died. Such evidence clearly demonstrated torture and serious physical abuse, thereby supporting the jury's finding that the death of John Barrier was heinous, atrocious or cruel. *See Stouffer v. State,* 742 P.2d 562, 563 (Okla.Crim.App.1987) (Opinion on Rehearing), *cert. denied,* — U.S. —, 108 S.Ct. 763, 98 L.Ed.2d 779 (1988). *See also Cartwright v. Maynard,* 822 F.2d 1477 (10th Cir.1987); *Maynard v. Cartwright,* 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988).

We are not presented with the case of finding an invalid aggravating circumstance and the subsequent revaluation of the aggravating and mitigating circumstances. *Stouffer,* 742 P.2d at 563. Therefore, we need not address that question here.

## XV

Appellant next claims that the aggravating circumstance that a murder is "especially heinous, atrocious, or cruel" is being applied in an arbitrary, and therefore, unconstitutional manner. For the reasons stated in *Fox v. State,* 779 P.2d 562 (Okla.Crim.App.1989), we find this assignment of error to be without merit.

## XVI

Appellant also contends that the aggravating circumstance, "the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society," is being applied in an unconstitutionally arbitrary manner. For the reasons given in *Fox v. State,* 779 P.2d 562 (Okla.Crim. App.1989), we reject this argument.

## XVII

■ Appellant contends that the trial court erred by allowing the jury to consider the two aggravating circumstances, that the appellant constituted a continuing threat to society and that he was previously convicted of a felony involving the threat or use of violence. Specifically, appellant asserts that the jury was allowed to consider the same evidence to support different aggravating circumstances. We disagree. We find that the aggravating circumstances involve different aspects of the appellant's criminal conduct. *See Green v. State,* 713 P.2d 1032, 1039–40 (Okla.Crim. App.1985).

The aggravating circumstance that the appellant constituted a continuing threat to society is supported by evidence from the crime itself and the appellant's lack of remorse afterwards. *Robison v. State,* 677 P.2d 1080, 1088 (Okla.Crim.App.1984), *cert. denied,* 467 U.S. 1246, 104 S.Ct. 3524, 82 L.Ed.2d 831 (1984). The aggravating circumstance that the appellant had previously been convicted of a felony involving the threat or use of violence, is supported by the appellant's prior convictions, to which the appellant stipulated. Furthermore, the record reveals that during the second stage closing argument, the appellant's prior convictions were the only evidence used by the State to support this aggravating circumstance. Thus, we find no duplication, and therefore, no error.

## XVIII

Appellant next urges this Court to modify his sentences to life imprisonment because he claims the mitigating circumstances outweighed the aggravating circumstances. During the sentencing stage of trial, appellant presented seven witnesses who testified on his behalf. Furthermore, five factors were presented to the jury for consideration in mitigation of appellant's guilt. The record reveals that the jury was properly instructed as to the State's burden of proof and of their duty to weigh the contervailing circumstances and to determine the appropriate sentences. The appellant has presented no reason for us to believe that the jury did not properly perform its function. Therefore, we decline to disturb the jury's verdict.

## XIX

Appellant asserts that the trial court erred in not instructing the jury that there existed a 'presumption of mitigation' which should stand until the State has disproven the existence of each mitigating circumstance beyond a reasonable doubt. The record reveals that the trial court gave an instruction which was similar in substance. For the reasons stated in *Fox v. State,* 779 P.2d 562 (Okla.Crim.App.1989), we find that the instructions given concerning sentencing and legally recognized presumptions adequately advised the jury of the appropriate law.

## XX

Appellant contends that admonishing the jury against letting sympathy play a part in their deliberations prevented them from considering the full range of possible mitigating factors in violation of the Eighth and Fourteenth Amendments. For the reasons stated in *Fox v. State,* 779 P.2d 562 (Okla.Crim.App.1989), we find this assignment to be without merit.

## XXI

■ In his final assignment of error, appellant contends that during the second-stage closing argument the prosecutor improperly urged sympathy for the victims. However, a review of the record reveals that none of the alleged improper comments were objected to at trial. Therefore,

all but fundamental error has been waived. *James v. State,* 731 P.2d 1384, 1388 (Okla. Crim.App.1987). We find that none of the remarks complained of violated any fundamental right of the appellant. Indeed, the comments or inferences were based on properly admitted evidence. This assignment of error is without merit.

## XXII

According to 21 O.S.1987 Supp., § 701.13, we have reviewed the evidence and verdicts and have determined that: 1) the sentences of death were not imposed under the influence of passion, prejudice or any other arbitrary factor; and, that 2) the evidence supports the jury's findings of the five aggravating circumstances charged, which were:

1) the defendant knowingly created a great risk of death to more than one person;

2) the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution;

3) the defendant was previously convicted of a felony involving the use or threat of violence to the person;

4) the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and,

5) that the murder of John Barrier was especially heinous, atrocious, or cruel.

Finding no error warranting reversal or modification, the judgments and sentences are AFFIRMED.

PARKS, P.J., reserves vote.

LANE, V.P.J., concurs.

BRETT, J., concurs in results.

LUMPKIN, J., specially concurs.

LUMPKIN, Judge, specially concurring:

I concur in the court's opinion and I write for the purpose of making additional comments regarding Appellant's Proposition of Error XXVI concerning the court's instruction to the jury that "sympathy, sentiment or prejudice" should not play a part in their deliberations.

This proposition of error is predicated upon the decision in *Parks v. Brown,* 860 F.2d 1545 (10th Cir.1988). The court accurately determines that the United States Supreme Court decision in *California v. Brown,* 479 U.S. 538, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987), is controlling on this issue. Judge Anderson, in his dissent in *Parks* to the court's holding on the sympathy instruction, accurately and poignantly stated:

The majority opinion proceeds on the premise that the jury focused on the word 'any' in the sentence about passions, ignoring the words and sense of the sentence as a whole. Upon that very slight and hypertechnical premise the majority constructs large conclusions: that the instruction is unconstitutional on its face because it commands the jurors to denigrate mitigating circumstances evidence; that this general instruction overrides or otherwise nullifies the specific instructions on mitigating circumstances, as well as other specific instructions; and that *California v. Brown,* 479 U.S. 538, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987), does not apply since the instruction there used the word 'mere' preceding the enumerated emotions.

The majority misconcieves the sense of the instruction: A reasonable juror would not stop part way through the sentence and question (at 'any ... sympathy') as the majority presumes. The sentence by its express terms refers to *arbitrary factors* ('any influence of sympathy, sentiment, passion, prejudice, or *other arbitrary* factor'). Thus, it sensibly cautions the jury against imposing sentence simply on the basis of arbitrary emotions. That is not qualitatively different from the meaning imparted by the instructions in *Brown.* In *Brown* the jury was directed not to divorce its considerations from the evidence and render an essentially whimsical decision based on mere sympathy. Here, the same directive is couched in terms of any *arbitrary* sympathy.

The context in which the sentence appears makes that clear. The next sentence in the instruction stresses impartiality. The preceding sentences state flatly that the jurors alone are the judges of the facts and that 'the *importance* and *worth* of the evidence is for you to determine.'

860 F.2d at 1566

The very foundation of our judicial system is that jurors should return a verdict based solely upon the evidence presented during the trial and the law given to them through the instructions as apply to that particular case, and that they not be influenced by outside knowledge, belief or emotion. In this case the jurors were instructed during the guilt phase of the trial that they should not allow their decision to be based upon any emotion or other arbitrary factor. During the penalty phase of the trial the jurors were specifically instructed to weigh aggravating and mitigating circumstances in determining the appropriate punishment. I concur with Judge Anderson in his analysis in *Parks* that the instructions must be viewed as a whole in light of what a reasonable juror would perceive. It is not proper to focus on an isolated word and apply it in a very exaggerated and hypertechnical manner.

PARKS, Presiding Judge, concurring in part, dissenting in part:

I concur in the affirmance of appellant's conviction; however, where, as here, the defendant has offered evidence of mitigating circumstances, it is unnecessary and confusing to the jury to give the so-called "anti-sympathy" instruction during the second stage as evidenced by the recent split of authority between the Tenth Circuit in *Parks v. Brown*, 860 F.2d 1545, 1552–59 (10th Cir.1988), and the Fifth Circuit in *Byrne v. Butler*, 847 F.2d 1135, 1139–40 (5th Cir.1988). While I agree it is improper to focus on the use of the words "any" or "mere" I find that the use of an "anti-sympathy" instruction in the second stage, where mitigating evidence has been introduced, improperly undermines the jury's consideration of mitigating evidence in violation of the Eighth Amendment. *See Parks*, 860 F.2d at 1553. I also continue to adhere to the views expressed in my special concurrence in *Foster v. State*, 779 P.2d 591 (Okla.Crim.App.1989), regarding the validity of the heinous, atrocious or cruel aggravating circumstance; however, I yield to the majority view as a matter of *stare decisis*.

Therefore, because I find the "anti-sympathy" instruction improper in the second stage, I would vacate the death sentence and remand for resentencing under the majority view enunciated in *Cartwright v. State*, 778 P.2d 479 (Okla.Crim.App.1989).