**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 6 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MARK ANDREW FOWLER,

      Petitioner - Appellant,

vs.

RON WARD, Warden, Oklahoma
State Penitentiary,

      Respondent - Appellee.

No. 98-6391

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 95-CV-750-T)**

---

Patrick J. Ehlers, Jr., Assistant Federal Public Defender, Death Penalty Federal
Habeas Corpus Division, Oklahoma City, Oklahoma, for Petitioner - Appellant.

Sandra D. Howard, Assistant Attorney General (W.A. Drew Edmondson, Attorney
General, on the brief), Attorney General, Oklahoma City, Oklahoma, for the
Respondent - Appellee.

---

Before **BRORBY**, **EBEL**, and **KELLY**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

## Background

In the early morning hours of July 3, 1985, three employees of the Wynn's IGA in Edmond, Oklahoma, were murdered in the process of a robbery planned and executed by Petitioner-Appellant, Mark Andrew Fowler ("Mr. Fowler") and co-defendant Billy Ray Fox ("Mr. Fox"). Mr. Fowler and Mr. Fox were arrested on July 4, 1985. Both admitted to being involved in the robbery, but they each accused the other of committing the murders. Following a jointly held jury trial in the Oklahoma County District Court, both were convicted of three counts of first degree felony murder, and were thereafter sentenced to death. The Oklahoma Court of Criminal Appeals ("OCCA") affirmed both Mr. Fowler's murder convictions and death sentence. See Fowler v. State, 779 P.2d 580 (Okla. Crim. App. 1989). Mr. Fowler's applications for post-conviction relief were denied by the Oklahoma Criminal Court of Appeals in 1994 and 1995. See Fowler v. State, 873 P.2d 1053 (Okla. Crim. App. 1994); Fowler v. State, 896 P.2d 566 (Okla Crim. App. 1995). Mr. Fowler filed a petition for habeas corpus in the United States District Court for the Western District of Oklahoma pursuant to 28 U.S.C. § 2254, on June 16, 1995. The district court denied his petition for habeas corpus relief on September 9, 1998. On October 19, 1998, the district court granted a certificate of probable cause for all issues in this appeal. See 28 U.S.C. § 2253 (pre-AEDPA); Foster v. Ward, 182 F.3d 1177, 1183 (10th Cir.

1999).

Mr. Fowler asserts the following grounds for relief: (1) the trial court failed to give a proper limiting instruction after admitting his co-defendant's redacted confession in violation of his Sixth Amendment right of confrontation and Fourteenth Amendment right to due process; (2) the trial court improperly denied a request for an instruction on second degree felony murder in violation of the Sixth, Eighth, and Fourteenth Amendments; (3) Mr. Fowler's trial counsel was constitutionally ineffective in violation of his Sixth Amendment rights; (4) the trial prosecutor made unconstitutionally improper comments and argument violating the Sixth, Eighth and Fourteenth Amendments; (5) Mr. Fowler was improperly denied an evidentiary hearing; (6) Mr. Fowler's death sentence was rendered unreliable by the use of unconstitutional aggravating factors.

Discussion

The Antiterrorism and Effective Death Penalty Act ("AEDPA") does not apply to this appeal, given that Mr. Fowler filed his habeas petition on June 16, 1995, prior to the law's enactment. See Lindh v. Murphy, 521 U.S. 320, 322-323 (1997). Therefore, we refer to pre-AEDPA law for guidance as to the appropriate standards of review. Our review is limited and petitioner is only entitled to relief if state court error "'deprived [petitioner] of fundamental rights guaranteed by the

Constitution of the United States.'" Brown v. Shanks, 185 F.3d 1122, 1124 (10th Cir. 1999) (quoting Jackson v. Shanks, 143 F.3d 1313, 1317 (10th Cir. 1998)). We review legal issues de novo, "'affording deference to the state court's construction of state law.'" Id. We review the federal district court's factual findings for clear error, while presuming that the state court's findings of fact are correct unless they are not fairly supported by the record. Id.

I.      Failure to Give Appropriate Limiting Instruction

Mr. Fowler asserts that the trial court violated his Sixth Amendment right to confrontation under Bruton v. United States, 391 U.S. 123 (1968), as clarified by Richardson v. Marsh, 481 U.S. 200 (1987). The court admitted a redacted confession against co-defendant Mr. Fox, and failed in the absence of any request to give an appropriate limiting instruction. We review claims under the Confrontation Clause de novo. See Hatch v. Oklahoma, 58 F.3d 1447, 1467 (10th Cir. 1995).

Richardson allows a court, despite the Confrontation Clause, to admit the confession of a non-testifying co-defendant. The confession must be (i) redacted to eliminate any reference to the non-confessing defendant, and (ii) accompanied by an appropriate limiting instruction that the confession is to be considered only against the confessor. See Richardson, 481 U.S. at 211. This is clearly a two-pronged requirement; a redaction, no matter how perfect, nevertheless requires an

appropriate limiting instruction immediately following the admission of the confession. See United States v. Green, 115 F.3d 1479, 1485 (10th Cir. 1997) ("In Richardson v. Marsh, the Supreme Court held that the confrontation clause of the Sixth Amendment was not violated by the admission of a non-testifying co-defendant's confession, assuming a limiting instruction, 'when the confession is redacted....'"); see also United States v. Chatman, 994 F.2d 1510, 1513 (10th Cir. 1993); United States v. Markopoulos, 848 F.2d 1036, 1038-39 (10th Cir. 1988). Here, the redacted confession of Mr. Fowler's co-defendant was introduced, without a limiting instruction. This was error, as the Oklahoma Court of Criminal Appeals properly concluded. See Fowler v. State, 779 P.2d 580, 587 (Okla. Crim. App. 1989). While it is true that a general instruction was provided at the end of the trial, charging the jury to give separate consideration to the case of each defendant, this is not sufficient to satisfy Richardson. The Richardson limiting instruction must be given immediately following the introduction of the co-defendant's confession to safeguard against inappropriate use of the confession against the non-confessing co-defendant. Immediately following the admission of Mr. Fox's confession, the trial court should have instructed the jury that "[A confession] [an admission] may not be considered by you against any defendant other than the person who made the [confession] [admission]." OUJI-CR 817 (1st ed. 1981).

Despite this error, Mr. Fowler is entitled to habeas relief only if the above trial error is not harmless. See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (adopting the harmless-error standard from Kotteakos v. United States, 328 U.S. 750 (1946)); see Crespin v. New Mexico, 144 F.3d 641, 649 (10th Cir. 1998). In the context of habeas review, an error is harmless unless it had "substantial and injurious effect or influence in determining the jury's verdict." See Crease v. McKune, 189 F.3d 1188, 1192 (10th Cir. 1999) (quoting Brecht 507 U.S. at 637). To warrant relief, Mr. Fowler must have suffered actual prejudice. Id. If we are in grave doubt as to the harmlessness of an error, the habeas petitioner must prevail. See O'Neal v. McAninch, 513 U.S. 432, 436 (1995). 'Grave doubt' exists when, in light of the entire record, the matter is so evenly balanced that the court feels itself in virtual equipoise regarding the error's harmlessness. Id. at 435. While the record must be reviewed in light of the error's effect, it is important to bear in mind that the appellate court may not usurp the jury's role as the arbiter of guilt or innocence. Kotteakos, 328 U.S. at 764. The factors that we consider include the closeness of the case, the centrality of the issue affected by the error, and the steps taken to mitigate the effects of the error. See United States v. Nyman, 649 F.2d 208, 212 (4th Cir. 1980).

The essence of Mr. Fowler's argument is that the trial court's failure to give an appropriate limiting instruction was not harmless because other

independent evidence was weak and circumstantial, and the prosecution relied on Mr. Fox's confession to implicate Mr. Fowler. Mr. Fowler argues that this error substantially contributed both to the jury verdict of guilty and sentence of death. We disagree.

The failure to give an appropriate limiting instruction did not substantially and injuriously contribute to the jury's conclusions in either the guilt or punishment stages of Mr. Fowler's trial. The confession, introduced through the testimony of Mr. Fox's roommate, established only that Mr. Fox had killed the victims, and "that [Mr. Fox] had hit one over the head with a gun." Tr. at 1123. The confession did not specify how Mr. Fox had committed the murders. Moreover, on cross-examination, Mr. Fox's roommate admitted openly that Mr. Fox did not say anything about shooting or stabbing any of the victims. Tr. at 1134. There was no reference to Mr. Fowler. His name and existence had been properly redacted. We likewise reject the concomitant argument of improper joinder due to the failure of the court to give an appropriate limiting instruction. As Mr. Fowler concedes, whether to join co-defendants for trial is discretionary, and reviewed for an abuse of that discretion. We find no such abuse here.

Mr. Fowler argues that the prosecutor's comments during closing arguments, discussing Mr. Fox's confession and evidence pointing to Mr. Fowler's involvement in the homicides, rendered the erroneous failure to give

appropriate Richardson limiting instructions not harmless. As we discuss further in our treatment of Mr. Fowler's prosecutorial misconduct claim, we are not persuaded.

There was strong independent evidence that pointed to Mr. Fowler's involvement in the murders. The record reflects that Mr. Fowler accompanied Mr. Fox to acquire the two firearms that were used in the robbery and murder. Mr. Fowler also admitted participating in the robbery, albeit as a lookout; and forensic evidence suggested that Mr. Fowler was present in the Wynn IGA storeroom – the locus of the murders. The state also presented forensic expert testimony that strongly suggested the involvement of two individuals in the commission of the murders. This evidence was ample to support a finding by the jury that Mr. Fowler was guilty of felony murder, which requires only that a murder results from the accused's participation in a robbery with a dangerous weapon. Okla. Stat. Ann. tit. 21 ♣ 701.7(B) (West 1982).

Similarly, the above evidence is sufficient to satisfy the strictures of Enmund v. Florida, 458 U.S. 782 (1982) and Tison v. Arizona, 481 U.S. 137 (1987), which require that the jury give individualized consideration to the culpability of defendants prior to imposing the death penalty. The evidence demonstrates that Mr. Fowler intended that lethal force might be employed. See Enmund 458 U.S. at 797. Specifically, Mr. Fowler's actions constituted major

- 8 -

participation in the felonies committed. This fact, combined with reckless indifference to human life, See Tison, 481 U.S. at 158, as well as the existence of five aggravators, leads to the conclusion that the failure to give the appropriate limiting instruction did not substantially and injuriously contribute to the jury's imposition of the death penalty. Having reviewed the entire record, we are not in grave doubt as to the harmlessness of the error, and as such, Mr. Fowler's claim for relief on this ground fails.

II.      Failure to Instruct on Second Degree Felony Murder

Mr. Fowler next argues that the trial court violated Beck v. Alabama, 447 U.S. 625 (1980), by denying Mr. Fowler's request for an instruction on the lesser-included offense of second-degree murder. It is certainly correct that a jury must be permitted to consider a verdict of guilt to a noncapital, lesser included offense in every case in which the evidence would have supported such a verdict. See Hopper v. Evans, 456 U.S. 605, 610 (1982) (clarifying the holding of Beck). However, as the Oklahoma Court of Criminal Appeals noted, see Fowler v. State, 779 P.2d at 585, the evidence presented in the instant case does not support such an instruction. This court held in Hatch v. Oklahoma, 58 F.3d 1447, 1454 (10th Cir. 1995), that once the state has established that a defendant used a dangerous weapon in the course of a robbery that results in death, the offense of second degree murder is no longer an option under Oklahoma law. Like the defendant in

Hatch, the evidence shows that Mr. Fowler intentionally participated in a robbery involving deadly weapons. He accompanied Mr. Fox to acquire the shotguns used in the robbery. Additionally, Mr. Fowler's admission and independent evidence demonstrate his participation in the robbery. As a result, he was properly charged with first degree murder, which only requires that a person or any other person takes the life of a human being during the commission of a robbery with a dangerous weapon. Okla. Stat. Ann tit. 21 § 701.7(B) (West 1982). Thus, there was no constitutional violation in the trial court's refusal to instruct the jury that it could find Mr. Fowler guilty of second degree murder as an alternative.

III.    Ineffective Assistance of Counsel

Mr. Fowler next argues that his counsel was constitutionally ineffective. In support of this argument he asserts that his counsel was under an actual conflict of interest in that counsel refrained from retaining needed experts out of concern that if the state refused to pay their fees it would adversely affect counsel's private practice and his reputation with the "expert" community; that counsel erroneously failed to provide the jury with Mr. Fowler's entire statement to the police; and that counsel was rendered ineffective by the trial court's failure to grant a continuance to amend his closing argument, which, when prepared, presumed the availability of a second degree felony murder instruction.

A review of the record reflects that the actual conflict of interest claim is being raised for the first time before this court. In the federal district court, Mr. Fowler claimed that his counsel was ineffective because of his ignorance of Ake v. Oklahoma, 470 U.S. 68 (1985). This lack of awareness resulted in counsel not seeking funding for more trial experts. See R. doc 38 at 42. This claim differs substantially from an allegation of actual conflict of interest. Prior to his appellate brief, Mr. Fowler did not cite a single authority that bears on conflict of interest as it relates to ineffective assistance of counsel. We will not consider issues not presented to the federal district court, absent extraordinary circumstances. See Smith v. Secretary of N.M. Dept. of Corrections, 50 F.3d 801, 814 n.22 (10th Cir. 1995) (citing Singleton v. Wulff, 428 U.S. 106, 120 (1976)). Mr. Fowler alleges no such extraordinary circumstances. Rather, he indicates explicitly that the issue was raised below. This is not an accurate statement of the record before us; there is no indication that Mr. Fowler raised an alleged actual conflict of interest issue either in the federal district court or in any state court proceedings. As such, we will not address it. See Bradford v. Ward, no. 98-6095, 1998 WL 440490 (10th Cir. July 17, 1998); see also United States v. Barnes, No. 97-5080, 1998 WL 37627 (10th Cir. Jan. 30, 1998).

Furthermore, we find Mr. Fowler's seemingly post-hoc argument insubstantial. The conflict claim was not specifically raised in any prior forum

- 11 -

and is unsupported by specific allegations.  Only now does Mr. Fowler point to specific individuals who could have testified on his behalf during the trial.  Mr. Fowler may not cobble together a claim of conflict of interest based on these broad statements in the record.

To succeed on his remaining allegations of ineffective assistance of counsel, Mr. Fowler must prove that (i) counsel's performance was constitutionally deficient and (ii) counsel's deficiency prejudiced the defense, depriving him of a fair trial with a reliable result.  See Strickland v. Washington, 466 U.S. 668, 687 (1984).  To demonstrate constitutional deficiency, Mr. Fowler must show that counsel's performance was completely unreasonable, not simply ill-advised in hindsight.  See Hoxsie v. Kerby, 108 F.3d 1239, 1246 (10th Cir. 1997).  Similarly, to show unconstitutional prejudice, Mr. Fowler must demonstrate that but for counsel's errors, there is a reasonable probability that the result of the proceedings would have been different.  See Strickland, 466 U.S. at 694.  An ineffective assistance claim may be resolved on either performance or prejudice grounds alone.  See Hatch v. Oklahoma, 58 F.3d 1447, 1457 (10th Cir. 1995).

Mr. Fowler asserts that his counsel's failure to introduce his entire statement, denying participation in the homicides, constitutes ineffective assistance.  We are not persuaded that but for this action, a reasonable probability

exists that the result of the proceedings would have been different. Mr. Fowler argues that his counsel should have introduced his statement to the effect that he had never seen a gun and there was no talk of killing people; the plan was merely to commit a larceny. This statement was against the weight of overwhelming evidence that Mr. Fowler accompanied Mr. Fox to acquire both of the shotguns used in the robbery shortly thereafter. The record amply reflects that Mr. Fowler was knowingly and deeply involved in the commission of the Wynn's IGA robbery that resulted in three murders. This is all that is required for first degree murder under Oklahoma law. Okla. Stat. Ann. tit. 21 § 701.7(B) (West 1982). Thus it is unlikely that introducing Mr. Fowler's entire statement would have had any effect on the outcome of his trial either in the guilt or penalty phases. Moreover, it is not at all clear that the statement would have been admitted, given the trial court's efforts to avoid any Bruton problems. Statements by both Mr. Fox and Mr. Fowler exculpating themselves by inculpating one another were redacted to avoid any Confrontation Clause problems.

Similarly, Mr. Fowler was not prejudiced by his counsel's closing argument. Reviewing the entire closing argument, it is clear that Mr. Fowler's counsel did not concede Mr. Fowler's guilt on first degree murder. Rather, Mr. Fowler argued within the context of the evidence presented that, while his client was present, he did not participate in a way that would warrant a guilty verdict on

- 13 -

first degree murder.  Specifically, Mr. Fowler's counsel referred to the jury instruction that mere presence at the scene of a crime without participation does not make a person a principal.  The statements by counsel must be viewed against the overwhelming evidence presented, and his failure to argue otherwise did not prejudice the outcome of Mr. Fowler's trial.  Mr. Fowler has not indicated that any viable defense strategy was compromised.  Thus, his claim of ineffective assistance on this ground fails.

IV.    Prosecutorial Misconduct

Mr. Fowler next argues that he was deprived of a fair trial by virtue of prosecutorial misconduct.  Specifically, he argues that the prosecutor improperly attributed Mr. Fox's redacted confession to him, rendering the trial fundamentally unfair.  Mr. Fowler also argues that the prosecutor improperly and unconstitutionally told the jury to disregard mitigating evidence.

Prosecutorial misconduct claims present mixed issues of law and fact reviewed by this court de novo.    See Fero v. Kerby , 39 F.3d 1462, 1473 (10th Cir. 1994).  Mr. Fowler is entitled to habeas relief only if he can establish that the prosecutor's misconduct or improper remarks infected the proceedings to such an extent that it resulted in a fundamentally unfair trial.    See Donnelly v. DeChristoforo , 416 U.S. 637, 645 (1974).

In the present case, the prosecutor made the following remarks, referring to

co-defendant Mr. Fox's previously admitted redacted confession, taking responsibility for killing the three victims:

> [Mr. Fox] rather crudely says, "Well, I messed up. I killed some people...I killed two of them and I killed the third one." What didn't he say? He didn't say I stabbed anybody. He said "I killed two people and I clubbed the third one." There were only two people out there that morning pulling that robbery. If all he did was shoot and club, who did the stabbing, ladies and gentlemen? You don't need Tom Bevel to answer that question for you although he answered it very well.

Tr. 1835. It is clear that a prosecutor may not urge the jury to attribute a redacted confession of a co-defendant against any defendant other than the person who made the confession. See Richardson v. Marsh, 481 U.S. 200, 211 (1987). However, we are convinced that the above comments do not run afoul of the dictates of Richardson. The prosecutor's comments did not inject Mr. Fowler into the confession, or suggest that Mr. Fox was referring to Mr. Fowler implicitly in his confession. Had he done so, this would have squarely violated the mandate of Richardson. We do not read Richardson to prohibit any reference whatsoever to the redacted confession of a non-testifying co-defendant in the closing argument of a joint trial. Rather, we find that the prosecutor's comments amount to a permissible argument based on the facts presented, suggesting that the jury deduce from the independent evidence that Mr. Fowler was involved in the homicides. A prosecutor in a joint trial may comment upon the evidence and

there is simply nothing in the redacted confession that implicates Mr. Fowler, directly or inferentially, in the crime, even when considered with other trial evidence. Thus, finding no prosecutorial misconduct, Mr. Fowler's claim for relief based on the above statements fails.

Mr. Fowler argues that a number of the prosecutor's comments violate the dictates of <u>Hitchcock v. Dugger</u>, 481 U.S. 393 (1987), which reversed a death sentence on the grounds that the advisory jury was instructed not to consider, and the sentencing judge refused to consider evidence of nonstatutory mitigating circumstances. Among the comments Mr. Fowler notes are the following:

> I tell you today what these two were prior to 1985 is irrelevant. Tr. at 2345.
>
> Why these defendants are what they are may be a good field of research, but it's no mitigation of [sic] justification for what they did. . . It doesn't change them back and it doesn't mitigate what they did. Tr. at 2348.
>
> Is it adequate punishment just to lock them up on a clean bed with clean clothes and three meals a day? Is that adequate punishment for taking three lives? Tr. at 2358.

The facts of Mr. Fowler's case are distinguishable from <u>Hitchcock</u>. The court and not the prosecutor instructs the jury; the prosecutor's comments, as well as the comments of the defense, go to the weight the jury should give to the mitigating evidence. The prosecutor, in this case, did not preclude the jury from considering any mitigating evidence. The court is permitted to shape and

- 16 -

structure the jury's consideration of mitigating evidence, provided that it does not preclude the jury from giving effect to the mitigating evidence. See Buchanan v. Angelone, 118 S.Ct. 757, 761 (1998). There is no suggestion here that these instructions were in any way faulty. The trial court instructed the jury that "[t]he determination of what are mitigating circumstances is for you as jurors to resolve under the facts and circumstances of this case." O.R. at 202. Also, after listing the numerous factors offered in mitigation, the trial court further instructed the jury that "[w]hether these circumstances existed, and whether these circumstances are mitigating, must be decided by you." O.R. at 204.

It is equally well-settled that the prosecutor may comment on "information about the defendant, his character, and the circumstances of his offense made known to the jury throughout the bifurcated trial." Coleman v. Brown, 802 F.2d 1227, 1239 (10th Cir. 1986)(quotation omitted). The prosecutor's remarks did not amount to misconduct that prejudiced Mr. Fowler so as to deny him a fair trial consistent with due process.

Mr. Fowler further claims that the following comments made by the prosecutor diminished the jury's sense of responsibility in violation of the rule set forth in Caldwell v. Mississippi, 472 U.S. 320 (1985):

> I had to make the decision to seek the death penalty.
> Before I could do that, the Edmond police department and
> the Oklahoma City police department had to bring the
> evidence to me upon which I could justify such a decision.

> And all of you, you, the jury and my staff and the police departments and their experts did what we did because it's our responsibility and duty.

Tr. at 2350. Mr. Fowler misconstrues <u>Caldwell</u>. In that case, the court held that the prosecutor could not suggest to the jury that it was not responsible for the imposition of death, given that there was an appeals process in which their determination would be reviewed. <u>See</u> <u>Caldwell</u>, 472 U.S. at 328-29. In this case, the prosecutor expressed to the jury that he did not undertake the decision to seek the death penalty lightly, by pointing to the different elements that went into making his decision. This is a permissible line of commentary. <u>See</u> <u>Moore v. Gibson</u>, Nos. 98-6004, 98-60100, 1999 WL 765893 at *19-20 (10th Cir. Sept. 28, 1999) (holding that it was not a violation of <u>Caldwell</u> for the prosecutor to note "a number of things [that] have to happen" before a death sentence is sought); <u>see also</u> <u>Sellers v. Ward</u>, 135 F.3d 1333, 1343 (10th Cir. 1998) (prosecutor's suggestion that he personally approved of death penalty and statements that "many hurdles had to be jumped before a capital murder trial could ever occur" were insufficient to suggest that anyone other than the jury had burden to make ultimate sentencing decision). Thus, we reject Mr. Fowler's claims based on a <u>Caldwell</u> violation.

V.     <u>Evidentiary Hearing</u>

Mr. Fowler next claims that he is entitled to an evidentiary hearing to

develop his claim of ineffective assistance of counsel. To establish entitlement to an evidentiary hearing under pre-AEDPA standards, Mr. Fowler must "make allegations which, if proved, would entitle him to relief." Stouffer v. Reynolds, 168 F.3d 1155, 1168 (10th Cir. 1999)(quotation omitted). If Mr. Fowler has made these requisite allegations, he is entitled to a hearing only if there is a factual dispute, and he did not receive a full and fair evidentiary hearing in a state court. See Miller v. Champion, 161 F.3d 1249, 1252 (10th Cir. 1998). Following our own independent review, we agree with the district court that the issues raised by Mr. Fowler were properly resolved on the basis of the record and the law, and as such, an evidentiary hearing is not required. See Castro v. Ward, 138 F.3d 810, 832 (10th Cir. 1998).

## VI. Unconstitutional Aggravating Factors

Finally, Mr. Fowler argues that his death sentence was rendered unreliable by unconstitutional aggravating factors. Specifically, he argues that, as applied in Oklahoma, the "heinous, atrocious, or cruel" factor as well as the "continuing threat" aggravating factor are both unconstitutional.

Mr. Fowler properly recognizes that this court has previously addressed these issues. We have upheld Oklahoma's application of the "heinous, atrocious, or cruel" aggravator in    Duvall v. Reynolds   , 139 F.3d 768, 792-794 (10th Cir. 1998). Likewise, this court has upheld Oklahoma's application of the "continuing

- 19 -

threat" aggravator in Nguyen v. Reynolds , 131 F.3d 1340, 1352-1354 (10th Cir. 1997). These resolutions bind this panel in the instant case. See Cooks v. Ward , 165 F.3d 1283, 1289 (10th Cir. 1998).

AFFIRMED.

98-6391, <u>Fowler v. Ward</u>

**EBEL, Circuit Judge, Concurring**

I agree that Mr. Fowler is not entitled to habeas relief. However, I would resolve the claim of prosecutorial misconduct on a different basis than the basis used by the majority. Accordingly, I concur in the judgment of the court but write separately on the issue of prosecutorial misconduct. I disagree with the majority's conclusion rejecting Mr. Fowler's contention that the prosecutor improperly attributed Mr. Fox's redacted confession to him during the closing argument of the first phase of the trial. The majority opinion finds that there was no prosecutorial misconduct, reasoning that the prosecutor's comments did not inject Mr. Fowler into the confession and therefore did not run afoul of the Supreme Court's decision in <u>Richardson v. Marsh</u>, 481 U.S. 200, 107 S. Ct. 1702, 95 L. Ed. 2d 176 (1987).

I believe the prosecutor's comments improperly associated Mr. Fowler with Mr. Fox's confession. In <u>Richardson</u>, the trial court admitted the confession of a non-testifying co-defendant but redacted the confession to omit all references to the defendant and gave a limiting instruction that admonished the jury not to use the confession against the defendant. <u>Id.</u> at 203-04. The prosecutor, however, linked the defendant to the confession of the non-testifying co-defendant during closing argument.[1] <u>Id.</u> at 205. The

---

[1] The redacted confession described a conversation between the non-testifying co-defendant and a third party in which the co-defendant and the third party planned to commit an armed robbery. <u>Richardson</u>, 481 U.S. at 203 n.1. The defendant later testified at trial. <u>Id.</u> at 204. The defendant stated that although she was present at a time when the co-defendant and third party were having a

Supreme Court specifically found that, by making such statements, the prosecutor improperly "sought to undo the effect of the limiting instruction by urging the jury to use [the non-testifying co-defendant's] confession in evaluating [the defendant's] case." Id. at 211.

The circumstances of this case present a nearly identical situation to that in Richardson. During closing argument, the prosecutor stated, "If all [Mr. Fox] did was shoot and club, who did the stabbing, ladies and gentlemen? You don't need Tom Bevel [the State's blood spatter expert] to answer that question for you although he answered it very well." In making this argument, the prosecutor intentionally injected Mr. Fowler into the confession by negative predicate and invited the jurors to use Mr. Fox's confession to evaluate Mr. Fowler's guilt. This is exactly the type of argument found

conversation, she could not hear the contents of the conversation because she was sitting in the backseat of the car and the radio was playing loudly. Id. During closing argument, the prosecutor said:

> It's important in light of [defendant's] testimony when she says [the third party] drives over to [the co-defendant's] home and picks him up to go over. What's the thing that she says? "Well, I'm sitting in the back seat of the car." "Did you hear any conversation that was going on in the front seat between [the third party] and [the co-defendant]?" "No, couldn't hear any conversation. The radio was too loud." I asked [sic] you whether that is reasonable. Why did she say that? Why did she say she couldn't hear any conversation? She said, "I know they were having conversation but I couldn't hear it because of the radio." Because if she admits that she heard the conversation and she admits to the plan, she's guilty of at least armed robbery. So she can't tell you that.

Id. at 205 n.2.

improper by the Supreme Court in Richardson. Thus, I cannot agree with the majority's conclusion that the prosecutor's argument fell within permissible boundaries under Richardson.

A prosecutor's improper comments or argument will require the reversal of a state court conviction only where those remarks sufficiently infect the trial so as to make it fundamentally unfair and, therefore, a denial of due process. See Donnelly v. DeChristoforo, 416 U.S. 637, 643, 645, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974); Jackson v. Shanks, 143 F.3d 1313, 1322 (10th Cir. 1998). In determining whether the prosecutor's improper argument rendered Mr. Fowler's trial fundamentally unfair, we consider the strength of the evidence against the defendant and decide if the prosecutor's statements could have tipped the scales in favor of the prosecution. See Jackson, 143 F.3d at 1322. As the majority opinion explains in connection with Mr. Fowler's contention that the trial court failed to give a proper limiting instruction pursuant to Richardson, there is strong independent evidence of Mr. Fowler's participation in the crimes. This fact leads me to conclude that the prosecutor's association of Mr. Fowler with Mr. Fox's confession, though improper, did not render the trial fundamentally unfair. I therefore concur in the judgment of the court.