# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 11-1285

_____

United States of America,          *
                                   *
          Appellee,                *
                                   *
     v.                            *
                                   *
Sylvester Richards Gayekpar,       *
                                   *
          Appellant.               *

_____                        Appeals from the United States
                                   District Court for the
No. 11-1333                        District of Minnesota.

_____

United States of America,          *
                                   *
          Appellee,                *
                                   *
     v.                            *
                                   *
Timothy Sewro Boe,                 *
                                   *
          Appellant.               *

_____

Submitted: October 21, 2011
Filed: May 7, 2012

_____

Before BYE, SMITH, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Sylvester Gayekpar and Timothy Boe were convicted by a jury of conspiracy to possess altered currency with intent to defraud, in violation of 18 U.S.C. §§ 371 and 472. The jury also found Boe guilty on two counts of possession of altered currency with intent to defraud, in violation of 18 U.S.C. § 472. The district court[1] sentenced Gayekpar to 21 months in prison, and Boe to a total of one year and one day in prison.

On appeal, Gayekpar challenges the district court's admission of testimony by a law enforcement agent about a prior conviction, and the district court's admission of Boe's post-arrest confession as evidence against Gayekpar. Boe also challenges the district court's admission of his post-arrest statement. Gayekpar and Boe both argue that the district court committed procedural error in determining their sentences. We affirm the judgments of the district court.

I.

The prosecutions in this case involved a scheme to alter United States currency with intent to defraud. It first came to the attention of law enforcement on February 1, 2010, when Boe and Benjamin Karbadeh approached Robert Martin at a gas station in St. Paul, Minnesota. Unbeknownst to Karbadeh and Boe, Martin was working as an informant for the Hennepin County Sheriff's Office. Karbadeh gave Martin his telephone number and an envelope with a $20 bill inside. Martin later opened the envelope, saw the $20 bill, and called Karbadeh, who told Martin that he could get

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

him "some more." Martin reported the suspicious contact to the police, who in turn contacted the United States Secret Service.

Two days later, Karbadeh and Boe met Martin in a room at the Ramada Inn in Richfield, Minnesota. Martin agreed to wear a recording device, and law enforcement officers recorded the audio of the meeting. During the meeting, Karbadeh and Boe purported to create two new $100 bills from pieces of black paper cut to the shape and size of genuine bills.

Karbadeh sandwiched a $100 bill provided by Martin between two pieces of black paper, poured a white substance and red dye on the bill and paper, wrapped the bill and paper in aluminum foil, and directed Martin to stand on the package for a few minutes. Karbadeh then unwrapped the foil package and pretended to wash the original black paper with water and another clear substance. Then Boe ironed the bills to dry them out, and Karbadeh showed Martin two additional $100 bills supposedly created through this conversion process. Through sleight of hand, Karbadeh had replaced the two pieces of black paper with genuine $100 bills that had been blackened previously with iodine. The substance used on the bills was a vitamin C solution, which reversed the discoloration caused by the iodine.

During the demonstration, Boe told Martin that if he provided $50,000, all in $100 bills, then he and Karbadeh would use this conversion process to create $100,000 in new money and give Martin half of it. Martin agreed.

On February 11, 2010, Karbadeh and Boe met Martin in the parking lot of a Perkins Restaurant in Minneapolis to discuss the details of the conversion of Martin's money. Karbadeh and Boe arrived at the meeting in a green Toyota Camry driven by a black male whom surveillance officers were unable to identify.

One week later, on February 18, 2010, Karbadeh and Boe met with Martin at a Comfort Inn Hotel in Bloomington, Minnesota, to demonstrate the conversion again and to perform the purported final conversion of Martin's money. Gayekpar drove Karbadeh and Boe to this meeting in a green Toyota Camry, which was owned by Boe. Gayekpar waited in the car while Karbadeh and Boe met with Martin in a room at the hotel. Law enforcement officers recorded the audio and video of the meeting with a camera hidden in the room. At the meeting with Martin, Boe and Karbadeh demonstrated the conversion process again, using sleight of hand to make it appear that they had created six new $100 bills.

Before performing the final purported conversion of Martin's money, Karbadeh and Boe left the hotel to obtain additional supplies. Followed by police surveillance officers, Gayekpar drove Karbadeh and Boe to a house, leased by Boe, in Coon Rapids, Minnesota. At the house, Karbadeh and Boe retrieved a black suitcase containing supplies for the conversion. Gayekpar drove Karbadeh and Boe back to the hotel, and waited in the car while they went back to the room.

Karbadeh and Boe returned to the room with the suitcase full of supplies and prepared to perform the purported conversion. After Martin produced the $50,000 from its hidden location, police officers entered the room and arrested Karbadeh and Boe. Meanwhile, officers arrested Gayekpar outside the hotel where he was waiting in the car. The officers searched Gayekpar and found 18 genuine $100 bills in his pocket. The police impounded the car and later searched it pursuant to a search warrant. Inside the car (the precise location was not established), police found two genuine $100 bills blackened with iodine, Boe's wallet containing a receipt for the purchase of various forms of cleaner, an empty box of aluminum foil, gauze, rubber gloves, and a bag of rubber bands.

Immediately after their arrests, Karbadeh, Boe, and Gayekpar were taken to the Minnesota field office of the Secret Service for interviews. Karbadeh and Boe agreed

to be interviewed, but Gayekpar declined. Secret Service Agent Michael Olson read Boe his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), and gave him a form listing those rights. Boe orally acknowledged that he understood his rights, and signed a form waiving his rights and consenting to the interview.

Agent Olson conducted the interview in English, Boe answered questions in English, and Agent Olson testified that Boe appeared to understand English. During the interview, Boe admitted his knowing involvement in the scheme to defraud Martin of $50,000. He also stated that the proceeds would be split three ways: the main person who set up the deal would receive the most, the person who went into the hotel to help with the scheme would receive 10-15%, and the person who waited in the car would receive approximately three percent. After giving the oral statement, Boe refused to provide a written statement. Karbadeh also waived his *Miranda* rights and admitted to his role in the scheme to defraud Martin.

## II.

A grand jury charged Karbadeh, Boe, and Gayekpar with conspiracy to possess altered currency with intent to defraud. The indictment also charged Karbadeh and Boe with possession of altered currency with intent to defraud.

Before trial, Boe moved to suppress his post-arrest statements. After an evidentiary hearing, the district court denied the motion, adopting the report and recommendation of a magistrate judge.[2]

Prior to trial, the government gave notice of its intent to introduce evidence of Gayekpar's conviction for possession of altered obligations of the United States with

---

[2]The Honorable Jeffrey J. Keyes, United States Magistrate Judge for the District of Minnesota.

intent to defraud, in violation of 18 U.S.C. § 472, "and the underlying circumstances giving rise to that conviction." Gayekpar moved *in limine* to exclude the evidence, but the district court ruled that the evidence was admissible, and the government introduced it at trial. In addition to presenting the certified judgment of Gayekpar's prior conviction, the government elicited testimony from Special Agent Lawrence Propes that Gayekpar tried to perpetrate a "traditional black money scheme" in 2005, that Abdullar Nzih Abdullah was the intended victim, and that Gayekpar attempted to get $90,000 from Abdullah. Gayekpar objected to some, but not all, of the questions about "underlying circumstances" on the ground that even if the substance of the answers would be admissible under Rule 404(b), the agent's testimony would be inadmissible hearsay. The court overruled the objections. At first, the court appeared to believe that the government was laying a foundation for expert testimony, but when the government disclaimed that purpose, the court ruled that the agent's testimony was "just background information" and that the evidence was admissible under Rule 404(b).

Gayekpar also moved *in limine* to redact any post-arrest statements of Karbadeh or Boe that mentioned Gayekpar directly or indirectly. The government agreed to redact the post-arrest statements, so that the agent would testify only that the proceeds of the scheme would be "split three ways," without specific reference to the driver as a recipient of one share. Gayekpar objected that the proposed redaction was insufficient to protect his rights under the Confrontation Clause of the Sixth Amendment. During a pre-trial conference, the district court ruled that the government could introduce the redacted statements with a limiting instruction requested by the government, and directed counsel to remind the court about the limiting instruction. The government then introduced the redacted statement at trial, but counsel did not request the limiting instruction, and the court did not give it.

On the eve of trial, Karbadeh pleaded guilty. Gayekpar and Boe proceeded to trial, and a jury returned verdicts of guilty on all counts. The district court sentenced

Gayekpar to 21 months in prison, and sentenced Boe to one year and one day in prison on each of the three counts, to be served concurrently.

## III.

Gayekpar contends that the district court erred by admitting evidence of his prior conviction for possession of altered obligations of the United States with intent to defraud, and testimony of Special Agent Propes concerning the "underlying circumstances giving rise to that conviction." We conclude that the court properly admitted evidence of the prior conviction under Federal Rule of Evidence 404(b) to prove Gayekpar's knowledge of the charged conspiracy in this case. Gayekpar's knowledge was an important issue in the case. The government was required to prove that although Gayekpar was not present for the demonstrations or discussions with Martin, he knowingly joined the conspiracy. The prior offense was similar in kind to the charged conspiracy, and it occurred within five years of the charged offense. Under these circumstances, it was not an abuse of discretion to admit the prior conviction. *See United States v. Stroud*, 673 F.3d 854, 860-61 (8th Cir. 2012); *United States v. James*, 564 F.3d 960, 963 (8th Cir. 2009).

The admission of Agent Propes's testimony raises a more difficult issue, but Gayekpar did not object to the critical questions and answers, and we conclude that there was no plain error. Propes testified without objection that (1) he was involved in 2005 in an investigation of a traditional black money scheme, (2) that Gayekpar was the person involved in that scheme, (3) and that Gayekpar tried to perpetrate the scheme on an immigrant shop owner, and (4) and that Gayekpar was found guilty in 2006 for conducting that scheme. Tr. 323-329. Gayekpar argues that Propes's testimony was inadmissible hearsay, but Gayekpar did not seek to voir dire the witness, and the witness's basis of knowledge is not clear from the record. Even assuming that Propes merely learned the information about which he testified from the trial record in 2006, Gayekpar cites no decisional authority holding that such

-7-

"background information" about a prior conviction is inadmissible. One court has found no abuse of discretion in admitting similar evidence. *United States v. Savoy*, 972 F.2d 343, 1992 WL 172669, at *5 (4th Cir. 1992) (per curiam). Given the lack of clarity in this record and the paucity of precedent to support Gayekpar's contention, we cannot say that the district court made an obvious error.

IV.

Gayekpar next asserts that the admission of Boe's redacted post-arrest statement violated his rights under the Confrontation Clause of the Sixth Amendment. In particular, he complains about Boe's out-of-court statement that the proceeds of the conspiracy would be "split three ways." Gayekpar moved *in limine* for a more substantial redaction that would eliminate reference to the three-way split, and the district court's definitive ruling to allow the evidence was sufficient to preserve the issue for appeal. Fed. R. Evid. 103(a); *United States v. Collier*, 527 F.3d 695, 699 (8th Cir. 2008).

The Confrontation Clause dictates that "where two defendants are tried jointly, the pretrial confession of one cannot be admitted against the other unless the confessing defendant takes the stand." *Richardson v. Marsh*, 481 U.S. 200, 206 (1987). There is a general assumption in the law, however, that juries follow their instructions. As such, the general rule is that "a witness whose testimony is introduced at a joint trial is not considered to be a witness against a defendant if the jury is instructed to consider that testimony only against a codefendant." *Id*. *Bruton v. United States*, 391 U.S. 123 (1968), recognized what the Court later termed a "narrow exception to this principle," namely, that "a defendant is deprived of his Sixth Amendment right of confrontation when the facially incriminating confession of a nontestifying codefendant is introduced at their joint trial, even if the jury is instructed to consider the confession only against the codefendant." *Richardson*, 481 U.S. at 207; *see Bruton*, 391 U.S. at 135-36.

*Richardson* applied the general rule, rather than the exception, and held that "the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." 481 U.S. at 211. Yet not all redactions are sufficient to make the limiting instruction reliable. A defendant's constitutional rights are violated when the court admits the out-of-court statements of a codefendant, which, "despite redaction, obviously refer directly to someone, often obviously the defendant, and which involve inferences that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial." *Gray v. Maryland*, 523 U.S. 185, 196 (1998).

If the only question in this case were the sufficiency of the redaction, then we would find no error. In *Richardson*, the Court reasoned that where one defendant's confession does not incriminate a codefendant on its face, but becomes incriminating "only when linked with evidence introduced later at trial," then a limiting instruction is sufficient to avoid a violation of the Confrontation Clause. 481 U.S. at 208. Although *Gray* held that a confession may be facially incriminating even when inference is required, 523 U.S. at 195-96, the Court reaffirmed the key holding of *Richardson*. Where a defendant's redacted confession does not refer directly to the codefendant himself, and becomes incriminating only in combination with other evidence, the Constitution permits the normal presumption that a jury will follow an instruction to disregard the confession when considering a verdict for the codefendant. *Id*. at 196. Here, the evidence that Boe said the proceeds of the scheme would be "split three ways" incriminated Gayekpar only when combined with other evidence at trial that Gayekpar was the driver for Boe and Karbedeh and the likely third member of a three-member conspiracy. As such, the redaction was sufficient to allow the pragmatic presumption that a jury would follow a limiting instruction. *See United States v. Logan*, 210 F.3d 820, 822-23 (8th Cir. 2000) (en banc).

Unfortunately, however, there was no limiting instruction in this case. Although the government requested a limiting instruction before trial, and the court asked for a reminder to give it, the jury was not advised to disregard Boe's confession when deciding Gayekpar's fate. With no cautionary instruction, the jury was free to consider Boe's statements when it decided the sufficiency of the government's case against Gayekpar. Indeed, the court instructed the jury that it should consider "all of the evidence" in the case. R. Doc. 183, Jury Instructions Nos. 1, 19. This evidence included Agent Olson's testimony that Boe said the profits from the scheme would be "split three ways," together with circumstantial evidence that Gayekpar was a third member of the conspiracy. Under the instructions, Boe became a witness "against" Gayekpar whom Gayekpar could not confront. The admission of Boe's statement thus violated Gayekpar's rights under the Sixth Amendment, and the error was plain. *See Richardson*, 481 U.S. at 206; *see also Hoon v. Iowa*, 313 F.3d 1058, 1061 n.1 (8th Cir. 2002); *Fowler v. Ward*, 200 F.3d 1302, 1307 (10th Cir. 2000) ("[A] redaction, no matter how perfect, nevertheless requires an appropriate limiting instruction immediately following admission of the confession."), *overruled on other grounds by Moore v. Marr*, 254 F.3d 1235, 1239 (10th Cir. 2001).

Gayekpar did not object to the district court's failure to give the limiting instruction, and our precedent thus confines our review to the plain error standard. *United States v. Rashid*, 383 F.3d 769, 775 (8th Cir. 2004), *vacated on other grounds by Abu Nahia v. United States*, 546 U.S. 803 (2005); *see also United States v. Sauza-Martinez*, 217 F.3d 754, 759 (9th Cir. 2000). The rationale for this rule seems to be that because Boe's confession was relevant to an issue in the case (i.e., *Boe's* culpability), and Gayekpar's rights could be protected by a cautionary instruction, it was Gayekpar's responsibility to request that limitation. *See generally* 1 Kenneth S. Broun, *McCormick on Evidence* § 59 (6th ed. 2009); *cf. United States v. Conley*, 523 F.2d 650, 654 n.7 (8th Cir. 1975). We also note that Gayekpar did not raise the lack of a limiting instruction on appeal—not even in a reply brief after the government acknowledged the error in its appellate brief. *See United States v. Granados*, 168

F.3d 343, 346 (8th Cir. 1999) ("Although Granados failed to raise these arguments in the district court or before this court, we have authority to review this issue for plain error."); *but cf. United States v. Ingram*, 594 F.3d 972, 978-79 (8th Cir. 2010).

To obtain relief under the plain-error standard, Gayekpar must show a reasonable probability that the outcome would have been different but for the error. *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004). We do not think he meets that burden. The government presented a strong circumstantial case against Gayekpar. He drove Boe and Karbedeh to the scene of the demonstration for Martin, and then drove them back and forth to a stash house leased by Boe where the conspirators obtained more supplies. Gayekpar waited in the car while Boe and Karbedeh entered Martin's hotel room for the transaction that would complete the scheme. Officers arrested Gayekpar in the car with eighteen genuine $100 bills on his person, and two genuine $100 bills that had been blackened with iodine elsewhere in the car. Gayekpar's defense that he lacked knowledge of the conspiracy in 2010 was undermined by his prior conviction in 2006 for carrying out a similar scheme. The testimony about Boe's statement that the proceeds would be split three ways did tend to implicate Gayekpar, and it could have affected Gayekpar's substantial rights if the prosecution's case had been weaker. But with the strength of the other evidence presented in this case, we see no reasonable probability that a proper limiting instruction would have resulted in a different outcome for Gayekpar.

IV.

Boe contends that his statements to Secret Service agents must be suppressed because his waiver of rights under *Miranda*, 384 U.S. 436, was not voluntary, knowing, and intelligent. There are "two distinct dimensions" to the inquiry whether a suspect's waiver of his *Miranda* rights was voluntary, knowing, and intelligent. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). First, the waiver "must have been voluntary in the sense that it was the product of a free and deliberate choice rather

-11-

than intimidation, coercion, or deception." *Id*. Second, the suspect must have waived his rights "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id*. We consider the totality of the circumstances in determining whether a suspect's waiver is valid. *Id*.

Reviewing the district court's legal conclusion *de novo*, we conclude that Boe's waiver was valid. There is no allegation or showing that agents intimidated, coerced, or threatened Boe prior to or during his interview. Boe argues instead that he was not fully aware of the nature of his rights and the consequence of his decision to abandon those rights. He points to his refusal to make a written statement immediately after he had given an unrecorded oral statement, arguing that this refusal shows that he believed the legal consequences of a written statement differed from those of an oral statement. This argument is foreclosed by precedent. *Connecticut v. Barrett*, 479 U.S. 523, 530 (1987); *United States v. Rohrbach*, 813 F.2d 142, 145 n.2 (8th Cir. 1987). A defendant may have any number of reasons for refusing to provide a written statement, but that refusal does not indicate an incomplete understanding of the consequences of waiving *Miranda* rights. *Barrett*, 479 U.S. at 530 & n.4. To the contrary, in this case, Boe was advised that "[a]nything you *say* can be used against you in court, or other proceedings," (emphasis added), and Boe responded that he understood.

Boe also explains that he is a Liberian national for whom English is not a primary language, and that he is unfamiliar with the criminal justice system in the United States. The record shows, however, that Boe spoke English during the entire interview, and Agent Olson had no problem understanding him. There is no evidence that Boe had a limited ability to read, speak, or understand English. Agents advised Boe of his *Miranda* rights, and no further knowledge of the criminal justice system is required to demonstrate validity of the waiver. After considering the totality of the circumstances, we conclude that Boe's *Miranda* waiver was voluntary, knowing, and intelligent.

V.

Boe and Gayekpar also challenge the sentences imposed by the district court. We review the court's factual findings for clear error and its interpretation and application of the guidelines *de novo*. *United States v. Lyons*, 556 F.3d 703, 706-07 (8th Cir. 2009).

First, Boe and Gayekpar both contend that the district court clearly erred in denying a downward adjustment under the advisory guidelines for a mitigating role in the offense. *See* USSG § 3B1.2. Each of them claims that he was a "minor participant" in the conspiracy, such that his offense level should have been decreased by two levels. *See id*. § 3B1.2(b). This adjustment applies to a defendant "who is less culpable than most other participants, but whose role could not be described as minimal." *Id*. § 3B1.2, comment. (n.5). Even a defendant who is decidedly less culpable than his co-defendants, however, is not entitled to the minor participant reduction if he is deeply involved in the criminal acts. *United States v. Alvarez*, 235 F.3d 1086, 1090 (8th Cir. 2000). It is the defendant's burden to establish that a minor-participant reduction is warranted. *United States v. Pruneda*, 518 F.3d 597, 606 (8th Cir. 2008).

Boe argues that he was entitled to a minor-participant reduction because he was the last to enter the conspiracy, did not have full knowledge of the scheme, and performed only a limited function. But Boe was present at every meeting with the putative victim, assisted in demonstrating the fictitious conversion process, leased the stash house, and would have received a share of the proceeds. Given this significant involvement in nearly all aspects of the conspiracy, the district court did not clearly err in finding that Boe was not a minor participant.

Gayekpar asserts that he was entitled to the reduction because he was merely the driver of the vehicle, and the conspirators agreed that he would receive only three

percent of the proceeds. Yet transportation to gather additional supplies and to meet the targeted victim was a necessary part of this black money scheme, *cf. United States v. Martinez*, 168 F.3d 1043, 1048 (8th Cir. 1999), and Gayekpar was to be compensated for his participation. We cannot say that the district court clearly erred in finding that Gayekpar's role was substantial enough to preclude an adjustment for minor role in the offense.

Second, Boe contends that the district court committed procedural error by failing to consider the factors set forth in 18 U.S.C. § 3553(a). A district court is not required to make specific findings about each § 3553(a) factor, so long as the record shows that the court considered them. *United States v. Vinton*, 631 F.3d 476, 487 (8th Cir. 2011); *United States v. Deegan*, 605 F.3d 625, 630 (8th Cir. 2010). Here, the sentencing transcript reflects that the district court considered the § 3553(a) factors. The district court stated that it found the sentence "appropriate and reasonable" in light of the § 3553(a) factors, and that it had taken into account several of the factors: the nature and circumstances of the offense, the history and characteristics of Boe, and the sufficiency of the sentence to afford adequate deterrence. We conclude that the district court did not commit procedural error.

\* \* \*

The judgments of the district court are affirmed.

_____