FILED
United States Court of Appeals
Tenth Circuit

September 11, 2020

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

WINTERHAWK GOODMAN,

Defendant - Appellant.

No. 19-8008
(D.C. No. 1:17-CR-00244-SWS-1)
(D. Wyo.)

**ORDER AND JUDGMENT**[*]

Before **BACHARACH**, **BALDOCK**, and **MURPHY**, Circuit Judges.

## I.  INTRODUCTION

Defendant, Winterhawk Goodman, was convicted by a jury of three counts of involuntary manslaughter and one count of assault resulting in serious bodily injury.  The jury found Goodman was driving a pickup truck that ran a stop sign and struck a minivan.  An occupant of the vehicle Goodman was driving and two occupants of the minivan were killed.  Goodman's sentence of 144 months'

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

incarceration is more than sixty percent higher than the high end of the advisory guidelines range.

Goodman challenges both his convictions and sentence. He asserts the evidence presented at trial was insufficient to support his convictions because it failed to show he was driving the pickup truck at the time of the accident. He did not file a motion for judgment of acquittal prior to taking this appeal. Goodman further asserts the testimony of one witness was admitted in violation of his Sixth Amendment rights. He failed to object to the challenged testimony during trial. As to his sentence, Goodman argues it is both procedurally and substantively unreasonable.

Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), this court **affirms** Goodman's convictions and sentence. We conclude the evidence presented was sufficient to show Goodman was driving the pickup truck at the time of the accident. Further, the testimony identified by Goodman as violating his Sixth Amendment rights was not offered into evidence for the truth of the matter asserted. Accordingly, it was not hearsay and did not implicate the Confrontation Clause. Goodman's above-guidelines sentence is not unreasonable.

## II. BACKGROUND

In November 2016, a pickup truck traveling at a high speed through the Wind River Indian Reservation ignored a stop sign and struck a minivan. There

were four occupants in the truck: defendant Goodman, Leslie Sixtoes, Drew Blackburn, and William C'Bearing. No one in the truck was wearing a seatbelt. C'Bearing died shortly after the crash. Two individuals in the minivan also died.

At the time of the accident, it was unclear who was driving the pickup truck because the occupants were not restrained and they were ejected from their seats. At the scene of the accident, Drew Blackburn told Deputy Donovan Detimore of the Fremont County Sheriff's Office that he was the driver. Later that night, however, Blackburn recanted his statement and identified Goodman as the driver. Goodman also made statements implicating himself as the driver, telling the occupant of the minivan at the scene that "he didn't see that car coming." He told a police officer employed by the Bureau of Indian Affairs that he was the driver but subsequently recanted that statement. Goodman told another officer "he thought he had killed his aunt, Leslie Sixtoes" and "that he had killed people" and "that he had been the driver of the car." Further, after an FBI victim specialist informed Goodman that C'Bearing had died in the crash, Goodman said, "So I killed my uncle."

Approximately one year after the accident, Goodman was charged with three counts of involuntary manslaughter and one count of assault resulting in serious bodily injury. At trial, the government presented video evidence showing Goodman driving the pickup truck earlier in the evening. An accident

reconstruction expert opined that Goodman was driving at the time of the accident, C'Bearing was the front-seat passenger, and Sixtoes and Blackburn were in the back seat. The forensic pathologist who autopsied C'Bearing's body testified that C'Bearing "was most likely in the passenger seat." A partially burned shoe, found by the passenger seat frame, was examined by an FBI forensic examiner who testified the shoe was consistent with those C'Bearing had been wearing the evening before the crash, and not consistent with the shoes worn by Goodman, Blackburn, or Sixtoes. This suggested C'Bearing was sitting in the front passenger seat at the time of the crash. Another expert witness for the prosecution, Dr. Bill Smock, reviewed the police reports, the truck, and the medical records of the truck's occupants. He testified that C'Bearing "was in the right front seat" at the time of the crash because his external and internal injuries were consistent with impacting the interior of the passenger door. Dr. Smock also concluded Goodman was the driver.

Lindsay Johnson, Ph.D., an expert in injury biomechanics retained by Goodman, testified the injuries sustained by C'Bearing were consistent with injuries that would be sustained by a driver. Dr. Johnson also opined that Goodman was in the front passenger seat, Sixtoes was in the middle of the back seat, and Blackburn was in the left rear seat. The prosecution called Steven Rundell, Ph.D., in rebuttal. Dr. Rundell agreed that Sixtoes and Blackburn were

-4-

seated in the back of the truck but he opined that C'Bearing was the right front passenger and Goodman was the driver.

The jury convicted Goodman on all counts, rejecting his theory that C'Bearing was the driver. A Presentence Investigation Report ("PSR") was prepared prior to sentencing. Based on a total offense level of twenty-six and a criminal history category of II, the PSR calculated an advisory guidelines range of seventy to eighty-seven months' imprisonment. The PSR, however, identified several factors that might support an upward departure from the advisory guidelines range, including the fact that multiple people were killed or injured in the crash and Goodman's conduct on the night of the accident was extremely dangerous. *See* USSG §§ 5K2.1 and 5K2.2. The PSR also noted that Goodman's criminal history calculation likely understated the seriousness of his prior criminal activity because the calculation did not consider Goodman's tribal court convictions, including twelve prior convictions for public intoxication and nine prior convictions for disorderly conduct or disturbing the peace. *See* USSG § 4A1.3(a). Goodman filed a written objection to any upward departure or variance. The district court, however, sentenced Goodman to thirty-six months for the manslaughter of each of the two individuals in the minivan, twenty-four months for the manslaughter of C'Bearing, and forty-eight months for the assault on the passenger in the minivan. The sentences were run consecutive to one

another, resulting in an aggregate sentence of 144 months, which is fifty-seven months higher than the high end of the advisory guidelines range.

Goodman appeals both his convictions and his sentence.

## III.  DISCUSSION

### A.  Sufficiency of the Evidence

Goodman asserts his convictions should be reversed because insufficient evidence was presented at trial to support the jury's finding that he was the driver.  Although he concedes in his opening brief that he did not challenge the sufficiency of the evidence in district court, he advocates for *de novo* review of the issue.  *De novo* review, however, applies only to sufficiency claims that were properly raised in a motion for judgment of acquittal.  *See* Fed. R. Crim. P. 29; *United States v. Goode*, 483 F.3d 676, 680 (10th Cir. 2007) (holding the Federal Rules of Criminal Procedure do not allow a defendant to wait until appeal to raise a challenge to the sufficiency of the government's evidence).  It is settled law in this court that a defendant who fails to move for judgment of acquittal forfeits his sufficiency claim and the standard of appellate review is plain error.  *Id*. at 681 and 681 n.1 (en banc footnote).  Goodman's opening brief, however, does not reference the plain-error standard and contains no discussion of why he is entitled to relief under that doctrine.  We have recently held that if a criminal defendant seeks appellate review of a forfeited sufficiency claim but fails to

argue for plain error review in his opening brief, this court may deem the issue waived. *United States v. Leffler*, 942 F.3d 1192, 1198-99 (10th Cir. 2019). The government argues that appellate review of Goodman's sufficiency claim is waived under *Leffler*.

Goodman acknowledges *Leffler* in his reply brief and concedes he may only be entitled to plain error review of his sufficiency claims,[1] explaining why

---

[1]Goodman also continues to advocate for *de novo* review because he "did not knowingly and voluntarily waive his insufficiency of the evidence argument in the district court." Appellant's Reply Br. at 4. Goodman's argument exposes his misunderstanding of the consequences that flow from waiver and forfeiture in criminal matters. *See United States v. Malone*, 937 F.3d 1325, 1327 (10th Cir. 2019) ("Waiver occurs when a party deliberately considers an issue and makes an intentional decision to forgo it. While forfeiture comes about through neglect, waiver is accomplished by intent."). "[A] party that has forfeited a right by failing to make a proper objection may obtain relief for plain error; but a party that has waived a right is not entitled to appellate relief." *United States v. Teague*, 443 F.3d 1310, 1314 (10th Cir. 2006) (quotation and emphasis omitted). Accordingly, while waiver of the sufficiency issue would foreclose appellate review completely, forfeiture of the issue entitles Goodman to plain error review, not *de novo* review as Goodman suggests in his reply brief. *See id*.

The government argues Goodman waived the sufficiency issue in district court and, thus, is foreclosed from seeking appellate review under any standard. The government's argument is premised on the following statement made by defense counsel at the close of the government's case-in-chief:

> Your Honor, just so the record's clear, now would be the appropriate time for me to make a Rule 29 motion [for judgment of acquittal], and certainly I do not make that motion at this time. I understand that if I don't make it now, I may not be able to make it later. But it's just the facts and the evidence—do not support a motion like that. I recognize—I recognize the evidence that's been presented, and I choose—I choose not to make that motion.

(continued...)

he failed to advocate for the plain error standard in his opening brief.[2]  Despite

glaring shortcomings in Goodman's opening and reply briefs, we conclude his

advocacy for the plain error standard in his reply brief is sufficient to preserve

appellate review.  *See id*.

Goodman's sufficiency challenge is solely focused on whether the

government met its burden of proving he was driving the pickup truck at the time

of the accident.  His arguments have a common theme: they all involve a

challenge to the credibility of the government's witnesses or highlight the fact

---

[1](...continued)
We agree that counsel's statement to the court was a knowing and voluntary
waiver of Goodman's right to challenge the sufficiency of the evidence at the
close of the government's case-in-chief.  Trial counsel fully recognized that the
close of the government's case was an appropriate time to bring a motion for
judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal
Procedure and he unambiguously informed the district court he did not intend to
bring such a motion at that time.  Because a Rule 29 motion can also be brought
later in the criminal proceedings, however, we will not treat counsel's statement
as foreclosing appellate review because there is no indication in the record that
any subsequent relinquishment of the right to raise the sufficiency issue was also
a waiver rather than a forfeiture.

[2]Goodman, *inter alia*, asserts he preserved appellate review of his
sufficiency claim by arguing for *de novo* review in his opening brief because the
plain error standard of review in sufficiency cases is nearly identical to the *de
novo* standard.  *Cf. United States v. Goode*, 483 F.3d 676, 681 n.1 (en banc
footnote)  (10th Cir. 2007) ("[A] conviction in the absence of sufficient evidence
of guilt is plainly an error, clearly prejudiced the defendant, and almost always
creates manifest injustice.").  A quick reading of *Leffler* reveals that this
explanation for a failure to argue plain error review in an opening brief has been
specifically rejected by this court because the two standards are not identical.
*See United States v. Leffler*, 942 F.3d 1192, 1199 n.1 (10th Cir. 2019).

that contradictory evidence was presented to the jury.[3]  For example, Goodman

asserts there was credible evidence that either Blackburn, Sixtoes, or C'Bearing

was driving the pickup truck at the time of the accident.  Even assuming such

evidence was presented to the jury, there was also substantial evidence to the

contrary.  Two government witnesses testified that Sixtoes and Blackburn were

seated in the back seat of the truck.  Goodman's own expert also opined that

Sixtoes and Blackburn were in the back seat.  An FBI forensic examiner testified

that a partially burned shoe found wedged under the passenger seat frame was

consistent with the shoes worn by C'Bearing, suggesting he was the front-seat

passenger, not the driver.  The government also presented video evidence

showing Goodman driving the pickup truck in the hours before the accident.  A

jury could certainly infer from this evidence that Goodman was also driving at

the time of the accident.  Such an inference is supported by the testimony of

---

[3]Goodman also briefly references testimony he characterizes as inadmissible hearsay and non-*Mirandized* statements he made to law enforcement. Appellant's Br. at 28 n.6, 29 n.7.  It is unclear whether he is independently challenging this testimony or arguing it cannot be considered when assessing the sufficiency of the government's evidence.  If it's the former, the arguments are waived because of inadequate briefing on whether admission of the evidence deprived him of his constitutional right to a fair trial.  *See MacArthur v. San Juan Cty.*, 495 F.3d 1157, 1160-61 (10th Cir. 2007).  If the latter, in undertaking review for sufficiency of the evidence, this court must consider all evidence admitted at trial, whether admitted properly or improperly.  *McDaniel v. Brown*, 558 U.S. 120, 131 (2010) (per curiam) (holding that a court reviewing a conviction for sufficiency "must consider all of the evidence admitted at trial, regardless of whether that evidence was admitted erroneously" (quotation omitted)).

several witnesses who heard Goodman make statements suggesting he was the driver. And, more directly, there was the testimony of two government experts who opined that Goodman was the driver.

The existence of conflicting evidence is common during criminal trials and a defendant is not entitled to reversal of his conviction as a result. To the contrary, when reviewing a sufficiency of the evidence claim this court resolves any possible conflicts in the evidence in favor of the government and assumes the jury found the government's evidence credible. *See United States v. Williamson*, 53 F.3d 1500, 1516 (10th Cir. 1995). Further, this court "does not weigh conflicting evidence or consider witness credibility, as that duty is delegated exclusively to the jury." *United States v. Castorena-Jaime*, 285 F.3d 916, 933 (10th Cir. 2002). A reasonable jury could have resolved all credibility and reliability issues against Goodman.

Having reviewed all the evidence admitted at trial under the applicable standards, there is no doubt this evidence is sufficient to support the jury's conclusion that Goodman was driving the truck at the time of the accident. It is clear there was no error, let alone plain error.

*B. Sixth Amendment*

Goodman also raises a Sixth Amendment challenge to testimony given by Deputy Detimore at trial, arguing Detimore's testimony violated his

constitutional right to confront Drew Blackburn. The challenged testimony involved Detimore's recounting of Blackburn's statement that Goodman was driving the truck at the time of the accident.

The Sixth Amendment's Confrontation Clause bars a court from admitting testimonial hearsay statements against a defendant at trial unless the defendant has an opportunity to confront the declarant. *Crawford v. Washington*, 541 U.S. 36, 68-69 (2004). Goodman did not object to Deputy Detimore's testimony at trial or ask for a continuance when Drew Blackburn failed to appear to testify. "Where a Confrontation Clause objection is not explicitly made below, [this court] will not address the constitutional issue in the absence of a conclusion that it was plain error for the district court to fail to raise the constitutional issue *sua sponte*." *United States v. Ibarra-Diaz*, 805 F.3d 908, 919 (10th Cir. 2015) (quotation omitted). There was no error here, because Deputy Detimore's testimony is not hearsay.

The challenged testimony was given when the prosecutor was questioning Deputy Detimore about his observations and actions at the scene of the accident. Specifically, Deputy Detimore testified as follows about his decision to seek a warrant to draw Goodman's blood:

> Q: Did you ever ask that anybody else's blood be taken that night?

A: I did. Upon arrival to the SageWest Lander Hospital, Drew Blackburn recanted his statement and advised that it was Winterhawk Goodman that was driving.

Q: And what did you do about that?

A: I sent Riverton Police Department to [the hospital] and notified–at that time Ms. Jahnke was on scene.

Q. The FBI agent?

. . .

A. Yeah. Yes, ma'am. And the FBI agent and I talked about securing a warrant for blood for Winterhawk Goodman.

As this transcription makes clear, the purpose of Deputy Detimore's testimony was to explain why he took the investigative step of obtaining a warrant to draw Goodman's blood. This court has "long recognized that an out of court statement is not hearsay if it is offered for the limited purpose of explaining why a government investigation was undertaken." *United States v. Edwards*, 782 F.3d 554, 560 (10th Cir. 2015) (quotation omitted). Here, Blackburn's identification of Goodman as the driver was never offered by the prosecution as proof that Goodman was, in fact, the driver;[4] it was gratuitously presented by Deputy Detimore to explain why Goodman's blood was drawn even though Blackburn had previously told Detimore he was driving.[5] Accordingly, it is not hearsay and

___

[4]The prosecution never referenced Blackburn's recantation when summarizing the evidence in its opening and closing arguments.

[5]The concurrence suggests Deputy Detimore's testimony was inadmissible hearsay because the reason he drew Goodman's blood was not at issue. Goodman himself, however, has never argued the testimony was irrelevant because the reason for the test was not at issue. And, there is no authority from this court for the proposition that testimony related to investigatory steps taken during a

(continued...)

the Confrontation Clause does not apply.[6]  *See id.* ("The [Confrontation] Clause

does not bar the use of statements (even testimonial statements) that are not

hearsay, *i.e.*, that are offered for purposes other than establishing the truth of the

matter asserted.").

The district court did not commit reversible error by failing to *sua sponte*

intervene when Deputy Detimore testified about the consequences of Blackburn's

---

[5](...continued)
criminal investigation is irrelevant unless the reason behind those steps is at issue in the case.  To the contrary, this court has held that background evidence is admissible if it is necessary to explain the context of the police investigation. *United States v. Hinson*, 585 F.3d 1328, 1337 (10th Cir. 2009) (looking at whether the "background evidence is necessary for the government to be able to tell a coherent story about its investigation").  Here, Deputy Detimore's testimony was given while he was being questioned about drawing blood from two individuals during a time in the investigation when police had not yet ascertained who was driving.  The challenged testimony explained why Goodman's blood-draw was ordered by law enforcement.

[6]The concurrence opines that Deputy Detimore's testimony was hearsay and goes on to opine that the failure of the district court to *sua sponte* strike the testimony was plain error.  The majority does not undertake plain error analysis. It should be noted, however, that a cursory review casts serious doubt on whether Goodman's substantial rights were affected by the single gratuitous phrase in Detimore's testimony to which the prosecution made no reference during the trial. *See United States v. Weiss*, 630 F.3d 1263, 1274 (10th Cir. 2012) ("An error only affects substantial rights when it is prejudicial, meaning that there is a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." (quotations omitted)).  The evidence that Goodman was driving was strong and there has been no showing how that single phrase affected the jury's verdict.  Goodman asserts that without the statement "the jury would only know that Drew Blackburn admitted he was the driver at the scene of the crash."  That argument for plain error, however, falls flat in the face of Goodman's own theory, presented through his expert, Dr. Johnson, that C'Bearing was the driver.

-13-

recantation.[7]

*C. Sentencing*

Goodman asserts the 144-month sentence imposed by the district court is unreasonable. Appellate review of the reasonableness of a defendant's sentence can involve both procedural and substantive components.[8] *See United States v. Adams*, 751 F.3d 1175, 1181 (10th Cir. 2014). "The procedural component concerns how the district court calculated and explained the sentence, whereas

---

[7]Goodman's Motion to Supplement the Record on Appeal is **denied**. The supplemental materials were not presented to the district court and they provide no support for Goodman's Sixth Amendment claim. *See United States v. Walker*, 761 F. App'x 822, 832 (10th Cir. 2019) (unpublished disposition cited for persuasive value pursuant to 10th Cir. R. 32.1).

[8]In their appellate briefing, the parties sometimes refer to Goodman's above-guidelines sentence as a departure and sometimes as a variance. Goodman advocates for the standard of appellate review applicable to variances. "Our review of a sentence outside the guidelines' recommended range hinges on the method by which the district court selects the particular sentence." *United States v. Adams*, 751 F.3d 1175, 1181 (10th Cir. 2014) (quotation omitted) (discussing the different standards of appellate review). The government advocated for both a variance and a departure and the district court used both terms during the sentencing hearing. The district court referenced the departure provisions of the Sentencing Guidelines during the sentencing hearing, but when it imposed Goodman's sentence the court stated:

> Pursuant to the Sentencing Reform Act of 1984 and those factors enumerated under Title 18, Section 3553, it is the judgment and sentence of this Court that the defendant, Winterhawk Goodman, is hereby sentenced to a term—total term of 144 months.

Based on our review of the record, including the sentencing transcript, we conclude the district court varied from the advisory guidelines range based on the § 3553(a) factors.

the substantive component concerns whether the length of the sentence is reasonable in light of the statutory factors under 18 U.S.C. § 3553(a)." *Id.* Here, our review is limited to the substantive reasonableness of Goodman's sentence.[9]

We review the substantive reasonableness of a sentence "whether inside, just outside, or significantly outside the Guidelines range under a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007); *United States v. Huckins*, 529 F.3d 1312, 1317 (10th Cir. 2008). When reviewing a district court's decision to vary upward from the advisory guidelines range, we "consider the extent of the deviation" but give "due deference to the

---

[9]Goodman's opening brief is ambiguous as to whether he is raising a procedural reasonableness challenge to his sentence. When he articulates the standard of review, he references only substantive reasonableness. Appellant's Br. at 37-38. Yet, he also argues the district court failed to address arguments he made in favor of a sentence within the advisory guidelines range. *See United States v. Wireman*, 849 F.3d 956, 962-63 (10th Cir. 2017) ("[W]hen a district court has varied upwards from the Guidelines, our cases have generally required the district court to specifically address and reject the arguments the defendant made for a more lenient sentence."). Goodman's argument on this point is confined to the following two sentences in his opening brief: "Defendant made cogent, non-frivolous arguments for a Guidelines sentence. The district court did not address these arguments and reject them." Appellant's Br. at 40. Goodman's brief fails to even identify the "cogent, non-frivolous arguments" he allegedly raised before the district court, let alone explain how they were relevant and not frivolous. Further, Goodman did not raise a procedural objection at sentencing which means we review the procedural reasonableness of his sentence for plain error only. *Wireman*, 849 F.3d at 962. Goodman, however, does not mention the plain error standard in his appellate briefing, making it impossible for this court to consider the claim. Accordingly, any procedural reasonableness claim Goodman intended to raise is waived due to inadequate briefing. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived.").

-15-

district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall*, 552 U.S. at 51. This standard requires us to "recognize that in many cases there will be a range of possible outcomes the facts and law at issue can fairly support; rather than pick and choose among them ourselves, we will defer to the district court's judgment so long as it falls within the realm of these rationally available choices." *United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007). It is well-settled that this court will "deem a sentence unreasonable only if it is arbitrary, capricious, whimsical, or manifestly unreasonable." *United States v. Gantt*, 679 F.3d 1240, 1249 (10th Cir. 2012) (quotation omitted).

Goodman's argument focuses exclusively on 18 U.S.C. § 3553(a)(6), the statutory provision requiring a district court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." In Goodman's opening brief, he summarizes four traffic-fatality cases decided by the federal courts in which the sentence imposed was lower than the one he received. *See United States v. Wiseman*, 749 F.3d 1191, 1196 (10th Cir. 2014) (holding "§ 3553(a)(6) applies only when addressing sentencing disparities among and between federal defendants."). Apart from summarizing the facts of these cases, Goodman makes

no other argument tying those cases to the substantive reasonableness of his sentence.[10]

Goodman's assertion that the length of his sentence is unreasonable because federal defendants in four other cases received shorter sentences even though they were also convicted of involuntary manslaughter in DUI cases involving multiple fatalities is meritless. The cases on which he relies do not establish an unwarranted disparity because § 3553(a)(6) requires a district court to take into account sentences imposed nationwide on defendants with similar records and advisory guideline calculations. *United States v. Verdin-Garcia*, 516

---

[10]Goodman accuses the district court of failing to mention or discuss § 3553(a)(6). We construe this as a procedural reasonableness argument that was not raised in the district court. Goodman has waived appellate review of this claim through inadequate briefing and failure to argue how he is entitled to relief under the plain error standard. *See supra* n.6. In any event, this court has held that "as a general rule[,] . . . when a court considers what the guidelines sentence (or sentencing range) is, it necessarily considers whether there is a disparity between the defendant's sentence and the sentences imposed on others for the same offense." *United States v. Gantt*, 679 F.3d 1240, 1248-49 (10th Cir. 2012). Here, Goodman conceded at the sentencing hearing that his advisory guidelines sentence was correctly calculated, stating to the district court: "We have a presentence report that has been properly calculated, extraordinarily thorough, of which I expected nothing less, and it gives us the appropriate sentence." Before imposing sentence, the district court referenced the high end of the advisory guidelines range and repeatedly stated it was not sufficient given the facts and circumstances of Goodman's crime. Based on the district court's recitation of the full circumstances surrounding the offense, it is clear the court considered whether imposing a sentence above the high end of the advisory guidelines range would create any unwarranted disparity. *See Gall v. United States*, 552 U.S. 38, 54 (2007) ("Since the District Judge correctly calculated and carefully reviewed the Guidelines range, he necessarily gave significant weight and consideration to the need to avoid unwarranted disparities.").

F.3d 884, 899 (10th Cir. 2008). Four superficially similar cases carefully selected by a party are insufficient to establish a nationwide disparity, particularly since Goodman does not argue the defendants in those cases had similar records to his or engaged in substantially similar criminal conduct.[11] Here, the record shows Goodman was traveling approximately seventy-one miles per hour in a forty mile-per-hour zone and failed to stop at a main intersection. An hour after the crash, his blood alcohol concentration was still 0.356 percent, nearly four times the legal limit. Further, Goodman had been drinking most of the day and knew he was intoxicated, yet he made the decision to drive multiple times throughout the evening. By engaging in this conduct, Goodman caused the deaths of a fellow passenger and two people in another vehicle. Under these facts, the district court's decision to sentence Goodman to 144 months' imprisonment was not arbitrary, capricious, whimsical, or manifestly unreasonable. *See Gantt*, 679 F.3d at 1249.

---

[11]Although it is not the government's burden, the government summarizes the facts and circumstances of the four federal cases cited by Goodman. Appellee's Brief at 39 n.12. None involved a defendant who (1) caused the deaths of both his passenger and the occupants of another vehicle, (2) drove with a blood-alcohol content nearly four times the legal limit, (3) was traveling more than thirty miles over the speed limit, or (4) took his case to trial rather than accept responsibility by pleading guilty.

## IV. CONCLUSION

For the reasons set out in detail above, Goodman's convictions and sentence are **affirmed**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge

*United States of America v. Winterhawk Goodman*, No. 19-8008
**BACHARACH**, J., concurring.

I agree with the majority's analysis on the sufficiency of the evidence and the reasonableness of the sentence. And like the majority, I would reject Mr. Winterhawk Goodman's argument involving the Confrontation Clause. But I respectfully disagree with the majority's reason for rejecting this argument. The majority concludes that Mr. Drew Blackburn's out-of-court statement didn't constitute hearsay. I respectfully disagree. In my view, the statement constituted inadmissible hearsay even under the plain-error standard. But I would reject Mr. Goodman's argument on the Confrontation Clause because Mr. Blackburn's statement was not obviously testimonial. I thus respectfully concur only in the disposition as to the Confrontation Clause.

**1.    Mr. Blackburn's out-of-court statement was introduced at trial.**

This case stemmed from a crash between a truck and a minivan. The truck had four occupants: Mr. Goodman, Mr. Blackburn, Mr. William C'Bearing, and Ms. Leslie Sixtoes. All of them were drunk, and the only question was who had been driving the truck. Prosecutors concluded that Mr. Goodman had been the driver and charged him with involuntary manslaughter and assault resulting in serious bodily injury.

Defense counsel admitted that Mr. Goodman had been drunk and stipulated that less than an hour after the crash, his blood-alcohol content

had been 356 milligrams per deciliter. Given this stipulation, defense counsel conceded early in the trial that Mr. Goodman had been "extraordinarily drunk" and that his blood-alcohol content had been "almost astronomical." R. vol. 3, at 134–35. But defense counsel denied that Mr. Goodman had been driving.

To prove that Mr. Goodman had been the driver, the prosecution called Deputy Donovan Detimore as a witness. On direct examination, Deputy Detimore testified that he had ordered testing of Mr. Blackburn's blood-alcohol content because Mr. Blackburn had admitted that he was the driver. The prosecutor then asked if anyone else's blood had been tested. Deputy Detimore answered that he had ordered other testing. He then volunteered that upon arriving at the hospital, Mr. Blackburn had recanted and said that the driver was Mr. Goodman.

Mr. Goodman did not object. But on appeal, Mr. Goodman argues that the introduction of Mr. Blackburn's out-of-court statement violated the Confrontation Clause. The government disagrees, arguing that the statement was neither testimonial nor hearsay.

**2.    Because Mr. Goodman did not object to introduction of the out-of-court statement, we review his argument for plain error.**

Because Mr. Goodman did not object to introduction of the out-of-court statement, we would reverse only if "it was plain error for the district court to fail to raise the constitutional issue *sua sponte*." *United States v.*

2

*Ibarra-Diaz*, 805 F.3d 908, 919 (10th Cir. 2015) (quoting *United States v. Perez*, 989 F.2d 1574, 1582 (10th Cir. 1993) (en banc)). To demonstrate plain error, Mr. Goodman must show that "the district court committed (1) error (2) that [was] clear or obvious under current law, and which both (3) affected [his] substantial rights and (4) undermined the fairness, integrity, or public reputation of judicial proceedings." *United States v. Mullins*, 613 F.3d 1273, 1283 (10th Cir. 2010).

**3.    The district court did not plainly err in failing to *sua sponte* exclude the out-of-court statement based on the Confrontation Clause.**

The district court did not plainly err in failing to *sua sponte* exclude the statement under the Confrontation Clause. To assess whether the district court plainly erred, we consider the evidence known to the district court when Deputy Detimore testified about the out-of-court statement. *See United States v. Gayekpar*, 678 F.3d 629, 636 (8th Cir. 2012); *see also* pp. 5 & 8–9, below. Given the evidence introduced to that point, the district court had little reason to regard the out-of-court statement as testimonial. Indeed, the only facts known to the district court suggested that the statement was not testimonial.

The Sixth Amendment's Confrontation Clause protects a defendant's right "to be confronted with the witnesses against him." U.S. Const. amend. VI. To supply this protection, the clause requires exclusion of testimonial hearsay unless the declarant testifies or is unavailable to testify

3

and was previously cross-examined about the statement. *United States v. Ibarra-Diaz*, 805 F.3d 908, 918 (10th Cir. 2015).

Mr. Blackburn didn't testify, so he wasn't subject to cross-examination. But the Confrontation Clause is generally limited to testimonial hearsay. *Id*. So we must determine whether the statement had been testimonial and had constituted hearsay.

An out-of-court statement is testimonial when the circumstances objectively indicate that the declarant made the statement for the primary purpose of "establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006). To assess the circumstances, courts consider various factors, including

- the existence of an emergency,

- the informality of the investigation, and

- the identity of the interrogator.

*Ohio v. Clark*, 576 U.S. 237, 244–46 (2015).

The existence of an ongoing emergency is pertinent because a statement could be intended to address the emergency rather than to assist in the prosecution. *Michigan v. Bryant*, 562 U.S. 344, 361 (2011). The informality of the interrogation matters because formal interrogations at a police station are more likely to yield testimonial statements than informal interrogations at the crime scene. *Id*. at 366; *see Clark*, 576 U.S. at 245.

4

The identity of the interrogator is relevant because statements to individuals who are not law-enforcement officers are far less likely to be testimonial than statements to law-enforcement officers. *Clark*, 576 U.S. at 246.

To assess the primary purpose of a statement, we consider the purpose that a reasonable person in the declarant's position would have had. *United States v. Smalls*, 605 F.3d 765, 778 (10th Cir. 2010). Some declarants may want primarily to aid the prosecution; but other declarants may have another primary purpose, such as addressing an ongoing emergency. *Bryant*, 562 U.S. at 368. Or declarants may lack any purpose when they're drunk or experiencing shock. *See id.* at 368–69 (acknowledging that victims could be so injured or incapacitated that they couldn't "think[] sufficiently clearly to understand whether [their] statements are for the purpose of addressing an ongoing emergency or for the purpose of future prosecution").

In analyzing the primary purpose of the out-of-court statement, we consider what the district court could have known at that point in the trial. *See* p. 3, above; *id.*, pp. 8–9, below. At that point in the trial, the court could have known only that Mr. Blackburn

- had told someone at the hospital that Mr. Goodman was the driver,

- had been drunk when making the statement, and

5

- had been in a horrific accident.

But the court had no way of knowing whom Mr. Blackburn had told, whether he had made the statement during an interrogation, or why Mr. Blackburn had made the statement.

According to Deputy Detimore, Mr. Blackburn had made the statement upon arriving at the hospital. But Deputy Detimore did not say whether Mr. Blackburn had made the statement to an officer or to someone else, such as a hospital employee.[1] The omission was significant. If Mr. Blackburn had made the statement to a hospital employee, a reasonable person probably wouldn't assume that the primary purpose had been to aid a law-enforcement investigation. *See United States v. Barker*, 820 F.3d 167, 172 (5th Cir. 2016) (concluding that a child victim's statements to a hospital nurse were not testimonial because the victim's principal purpose was to help the nurse in providing medical care).

Nor could the court have known whether Mr. Blackburn had made the out-of-court statement during an interrogation or had blurted out the statement.[2] If the statement hadn't resulted from an interrogation,

---

[1] Deputy Detimore later testified on cross-examination that Mr. Blackburn had made the statement to officers. But this information was unavailable to the court when Deputy Detimore volunteered on direct examination that Mr. Blackburn had recanted.

[2] Deputy Detimore testified that Mr. Blackburn had acknowledged, in response to a question, that he was driving. But when Deputy Detimore

6

introduction of the statement would be less likely to violate the Confrontation Clause. *See Michigan v. Bryant*, 562 U.S. 344, 377 (2011) (observing that an informal situation makes the statement less likely to be considered testimonial).

And the district court couldn't have known why Mr. Blackburn had made the statement. Indeed, the available facts suggested that Mr. Blackburn had made the statement because he was drunk and shaken from the accident.

Before the testimony about the out-of-court statement, Deputy Detimore testified that Mr. Blackburn had reeked of alcohol, had slurred his speech, and had acted erratically, kicking the emergency medical personnel who were trying to treat him. Mr. Blackburn not only was drunk but also had just experienced a traumatic accident, occupying a truck that had rolled into a ditch, flipped over several times, and erupted in fire. The accident was so traumatic that Deputy Detimore said that he had never seen a worse crash scene during his thirteen years in law enforcement.

---

testified about the recantation, he did not say whether Mr. Blackburn had volunteered the information or recanted when responding to a question. *Compare* R., vol. 3, at 181 (explaining that Mr. Blackburn stated that he had been driving after Deputy Detimore asked who had been driving), *with* R., vol. 3, at 187–88 (not stating whether anyone had asked Mr. Blackburn who the driver was).

Given Mr. Blackburn's intoxication and the severity of the accident, the district court could reasonably conclude that Mr. Blackburn had made the statement because he was drunk and shaken from the crash—not to aid an investigation.

Given the totality of circumstances known at that point in the trial, the district court could reasonably conclude that the out-of-court statement hadn't been testimonial. Even if the statement had been testimonial, however, the limited information available to the district court would prevent us from regarding any error as obvious. *See United States v. Gayekpar*, 678 F.3d 629, 636 (6th Cir. 2012) (concluding that introduction of a law-enforcement officer's testimony wasn't an obvious error because the district court couldn't have known that the officer might have based his knowledge on inadmissible hearsay).

To bolster his characterization of the statement as testimonial, Mr. Goodman moved to supplement the record with more law-enforcement reports. But these reports cannot help us to assess plain error because they weren't accessible to the district court when the out-of-court statement was introduced. *See United States v. Frost*, 684 F.3d 963, 977 (10th Cir. 2012) ("Where the determinative facts are missing from the record due to the defendant's failure to make a timely objection, we will not find plain error based on the possibility that better factual development would have made

8

the error clearer."), *overruled on other grounds by United States v. Bustamante-Conchas*, 850 F.3d 1130, 1143–44 (10th Cir. 2017) (en banc).

But even if the district court could have considered the supplemental materials, they wouldn't have suggested that Mr. Blackburn's statement was testimonial. Those materials say that Mr. Blackburn recanted to emergency medical technicians, not an officer.[3] If Mr. Blackburn recanted to emergency medical technicians, rather than an officer, the statement would not have been obviously testimonial. *See* p. 6, above. So the supplemental materials suggest that the statement was not testimonial.

4.  **The government erroneously argues in the alternative that introduction of the out-of-court statement did not satisfy the plain-error standard for hearsay.**

The government also argues in the alternative that the Confrontation Clause wasn't violated because the out-of-court statement didn't constitute hearsay, and the majority agrees. I respectfully disagree. In my view, the statement was obviously hearsay, so the district court would have plainly

---

[3]    The supplemental record contains another report relating to the FBI's interview of Mr. Blackburn. This interview took place at a detention center days after the accident. But this interview is apparently not the source of the statement that Deputy Detimore testified about. He testified about a statement that Mr. Blackburn had made upon arriving at the hospital on the night of the accident. *See* p. 6, above.

erred in allowing introduction of the out-of-court statement if it had been testimonial.

"Hearsay" is defined as an out-of-court statement offered for the truth of the matter asserted. *See* Fed. R. Evid. 801(c). The matter asserted was that Mr. Goodman had been driving—the only contested issue at trial. But if the government had offered the statement for some other relevant purpose, the statement would not have constituted hearsay. *See United States v. Freeman*, 816 F.2d 558, 563 (10th Cir. 1987).

According to the government, it offered Mr. Blackburn's statement to show why an officer ordered a second blood-draw from Mr. Goodman. To assess this ostensible purpose, we consider "whether the purported background evidence [was] necessary for the government to be able to tell a coherent story about its investigation." *United States v. Hinson*, 585 F.3d 1328, 1337 (10th Cir. 2009). If the government "introduces evidence that bore on the ultimate issue in a case but that was not necessary to explain the background of a police investigation, the only reasonable conclusion we can reach is that the evidence was offered, not as background, but as support for the government's case against the defendant." *Id*. (cleaned up).[4]

_____

[4]     The majority states that Mr. Goodman hasn't questioned the relevance of the reason for the blood draw. I respectfully disagree. Mr. Goodman argues that "[i]f [the statement] was not offered for its truth, then the statement is pointless because it served only to exonerate Drew Blackburn and inculpate Mr. Goodman." Appellant's Opening Br. at 34.

10

The government didn't need to explain why officials had tested Mr. Goodman's blood-alcohol content. Indeed, the prosecutor explained early in the trial that officials had tested Mr. Goodman's blood because of suspicion that he might have been the driver. *See* R., vol. 3, at 124 (prosecutor's explanation in opening statement that Deputy Detimore had instructed officers to test Mr. Goodman's blood-alcohol content because of suspicion that he might have been driving).

After Mr. Blackburn recanted, officers retested Mr. Goodman's blood-alcohol content. But no one ever questioned the reason for the second test. Given the absence of any question about the reason for the second test, "the only reasonable conclusion we can reach is that the evidence was offered, not as background, but as support for the government's case against the defendant." *United States v. Hinson*, 585 F.3d 1328, 1337 (10th Cir. 2009). Indeed, the statement cemented the government's proof on the sole contested issue—whether Mr. Goodman had been the driver. So the statement was obviously hearsay.

Given the obviousness of the hearsay, introduction of the out-of-court statement would constitute plain error if introduction of the statement had affected Mr. Goodman's substantial rights and the integrity of the judicial proceedings. *See* p. 3, above.

An error affects substantial rights when the outcome is affected. *United States v. Gonzales-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (en

11

banc). And an error affects the integrity of the judicial proceedings when the error concerns a closely contested issue that's subject to conflicting evidence. *United States v. Westmoreland*, 240 F.3d 618, 635 (7th Cir. 2001).

The majority argues that the government might have needed to explain why the officers had taken a second blood-draw from Mr. Goodman. But the government never made that argument at trial because there was no need. The reason for the second blood-draw was unimportant, but what Mr. Blackburn had said was critical because of its content: that Mr. Goodman had been driving. The truthfulness of that statement constituted the sole issue at trial: whether Mr. Goodman had been the driver.

The majority reasons that the government had strong evidence that Mr. Goodman had been driving. A reasonable jury could have certainly found that Mr. Goodman had been driving. *See* Majority Op. at 10. The government's evidence included surveillance footage of Mr. Goodman driving earlier in the evening, expert testimony that Mr. Goodman had been the driver, and even Mr. Goodman's own statements.

But a reasonable jury could have also found that someone else had been driving. Someone who had seen the occupants earlier in the day testified that he believed that Mr. Goodman hadn't been driving, and there was at least some evidence pointing to every other occupant of the truck.

12

For example, Mr. Blackburn first said that he had been the driver. And someone at the scene believed that Ms. Sixtoes had been driving because she had been on the driver's side. In addition, an expert witness testified that Mr. C'Bearing's injuries indicated that he had been driving. Given the totality of the evidence, a reasonable jury could have had a plausible basis to find that any of the three other occupants had been the driver.

Given the conflicting evidence, introduction of Mr. Blackburn's out-of-court statement could have affected the outcome. Though the government had ample evidence against Mr. Goodman, that evidence didn't include testimony from anyone who had seen Mr. Goodman driving at the time of the accident. But Mr. Blackburn had been in the truck and would have known who was driving. So his out-of-court statement gave the government direct evidence that Mr. Goodman had been the driver. Given the compelling nature of that direct evidence on the sole issue at trial,[5] the obvious hearsay affected Mr. Goodman's substantial rights and the integrity of the judicial proceedings.

* * *

---

[5] The government also argues that the out-of-court statement lacked credibility because Mr. Blackburn had made "contradictory statements" while "highly intoxicated." Appellee's Resp. Br. at 31–32. But if Mr. Blackburn's statement lacked credibility, why did the government allegedly rely on it? At trial, no one questioned the credibility of Mr. Blackburn's out-of-court statement identifying Mr. Goodman as the driver.

13

Though the statement obviously constituted inadmissible hearsay, it was not obviously testimonial. I would thus reject Mr. Goodman's argument involving the Confrontation Clause.

**5.    Conclusion**

The district court did not plainly err in failing to *sua sponte* exclude the out-of-court statement based on the Confrontation Clause. The district court lacked the necessary facts to regard the out-of-court statement as testimonial. But I would reject the government's argument that the statement didn't satisfy the plain-error test for hearsay. I would thus affirm the judgment, but on the ground that the statement was not obviously testimonial.